**40**

UNITED STATES, Appellee,

v.

Yvonne M. TURNER, Specialist, U.S. Army, Appellant.

No. 65,020.
CM 8902255.

U.S. Court of Military Appeals.

Argued Feb. 14, 1991.

Decided Sept. 3, 1991.

For Appellant: *Captain Michael J. Berrigan* (argued); *Lieutenant Colonel Russell S. Estey* (on brief); *Major Michael J. Kelleher.*

For Appellee: *Lieutenant Colonel Daniel J. Dell'Orto* (argued); *Colonel Alfred F. Arquilla* and *Captain Denise J. Arn* (on brief).

*Opinion of the Court*

COX, Judge:

Today we decide whether a servicemember obstructed military justice when she presented a false urine sample during a random, command-directed urinalysis inspection. 32 MJ 41. *See* Art. 134, Uniform Code of Military Justice, 10 USC § 934. We hold that she did not because the test was administered as part of a unit inspection and, therefore, her action, although an attempt to preclude the discovery of her recent drug use, did not amount to obstruction of military justice.

I

Appellant admitted during the providence inquiry that sometime between January 3 and 17, 1989, she knowingly and wrongfully used cocaine. On January 18, 1989, appellant was required to participate in her unit's command-directed unit urinalysis inspection. When appellant's time came to present her urine sample, she became fearful that her recent drug use would be

detected. To avoid such detection, appellant dipped the specimen cup (supplied for the test) in the toilet and submitted toilet water as her urine specimen. Personnel conducting the test immediately recognized the specimen for what it was—cold toilet water. Appellant was then told to provide yet another sample. This time, per instructions, appellant supplied her own urine. Subsequently, the "true" urine sample tested positive for cocaine use. Appellant was charged with, and pursuant to her pleas, was convicted of obstructing justice.* The Court of Military Review affirmed the findings and sentence, 30 MJ 984 (1990), and appellant petitioned this Court for further review. We granted her petition. It is appellant's contention that presentation of a false urine sample during a unit urinalysis inspection does not constitute obstructing justice. We agree.

## II

■ Military inspections, traditionally, have "been a 'tool' for a commander to use in insuring 'the overall fitness of [his] unit to perform its military mission.'" *United States v. Middleton,* 10 MJ 123, 127 (CMA 1981) (footnote omitted), *citing United States v. Wenzel,* 7 MJ 95, 97 (CMA 1979) (Fletcher, C.J., concurring). An inspection, specifically a compulsory urinalysis, is not a tool for collection of evidence solely for criminal prosecution; rather, such an inspection "may result in admonitions or adverse administrative action for a servicemember—rather than in criminal prosecution." *United States v. Bickel,* 30 MJ 277, 285 (CMA 1990). A compulsory urinalysis, as part of a military inspection, may be conducted without probable cause or individualized suspicion and is not "an unreasonable intrusion." *Id.* at 285.

■ Furthermore, there is a distinction between a search and an inspection. A "commander has the inherent power (and continuing duty) to inspect his organization, in the strict sense of the word, formally or informally, at any time, to determine its ability to perform its mission." *United States v. Lange,* 15 USCMA 486, 488, 35 CMR 458, 460, (1965), quoting unpublished decision of Board of Review in that case. As Judge Kilday highlighted in *Lange:*

> Comparing "search" with "inspection," we find that a search is made with a view toward discovering contraband or other evidence to be used in the prosecution of a criminal action. In other words, it is made in anticipation of prosecution. On the other hand, an inspection is an official examination to determine the fitness or readiness of the person, organization, or equipment, and, though criminal proceedings may result from matters uncovered thereby, it is not made with a view to any criminal action. It may be a routine matter or special, dictated by events, or any number of other things, including merely the passage of time. There is no requirement for "probable cause," as that term is used in the law, but it may result from a desire of the commander to know the status of his organization or any part of it, including its arms, equipment, billets, etc.

*Id.* at 489, 35 CMR at 461 (footnote omitted), quoting unpublished decision of Board of Review in that case. Mil.R.Evid. 313(b) states, in part:

> An "inspection" is an examination of the whole or part of a unit, organization, installation, vessel, aircraft, or vehicle, including an examination conducted at entrance and exit points, conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle. An inspection may include

---

* Pursuant to her pleas, appellant was also convicted by special court-martial, military judge alone, of one specification of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. She was sentenced to a bad-conduct discharge, confinement for 2 months, forfeiture of $400.00 pay per month for 6 months, and reduction in grade to E-1. Acting pursuant to a pretrial agreement, the convening authority reduced the amount and term of the forfeitures by half but otherwise approved the sentence.

but is not limited to an examination to determine and to ensure that any or all of the following requirements are met: that the command is properly equipped, functioning properly, maintaining proper standards of readiness, sea or airworthiness, sanitation and cleanliness, and that personnel are present, fit, and ready for duty. An inspection also includes an examination to locate and confiscate unlawful weapons and other contraband. *An order to produce body fluids, such as urine, is permissible in accordance with this rule. An examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inspection within the meaning of this rule.*

(Emphasis added.) Therefore, the underlying purpose of an inspection differs from that behind a search which is governed by Fourth Amendment requirements. 3 W. LaFave, *Search & Seizure* § 103(c) at 684 (2d ed. 1987). Given this dichotomy, a servicemember's obstructionist acts against an inspection necessarily are viewed differently from actions taken to obstruct a search.

When a servicemember obstructs a search, one can clearly state that a criminal investigation is being impeded. Hence, one of the elements of obstructing justice is that "the accused had reason to believe there were or would be criminal proceedings pending." Para. 96b(2), Part IV, Manual for Courts–Martial, United States, 1984.

In this case, we have no evidence tending to show that the urinalysis was anything more than "to ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle." *See Murray v. Haldeman*, 16 MJ 74, 82 (CMA 1983), quoting Mil.R.Evid. 313(b). No one individual was singled out, and appellant presented her urine sample as did others randomly selected. Therefore, the propriety of the unit inspection, in the form of a unit urinalysis, is unquestioned.

## III

We have long recognized the offense of obstruction or interference with the administration of military justice as an offense under Article 134, independent of other Federal statutes. *United States v. Long*, 2 USCMA 60, 6 CMR 60 (1952); *see also United States v. Williams*, 29 MJ 41, 42 (CMA 1989); *United States v. Jones*, 20 MJ 38, 40 (CMA 1985). Moreover, in *Jones,* this Court agreed with the Air Force Court of Military Review when they stated that conduct amounting to obstruction of justice "is equally pernicious and disruptive whether or not formal charges are pending." 20 MJ at 40, quoting from *United States v. Chodkowski*, 11 MJ 605, 607 (1981), *aff'd*, 14 MJ 126 (CMA 1982). The elements of the offense as "generally recognized" in military law, are as follows:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and,

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*United States v. Guerrero*, 28 MJ 223, 226–27 (CMA 1989); para. 96b, Part IV, Manual, *supra.* This provision of military law concerns itself with protecting "the administration of justice in the military system." *United States v. Long*, 2 USCMA at 65, 6 CMR at 65; *see also United States v. Guerrero*, 28 MJ at 227.

## IV

Here the alleged obstructionist act consisted of appellant's attempting to preclude the discovery of her offense by impeding

an inspection, not a criminal investigation. At the time of the inspection, she was not a suspect in any crime or part of any criminal investigation. There were no other criminal proceedings or other official acts taking place that would lead to disciplinary action. *See United States v. Jones, supra* (chain of command seized pouch suspected of containing heroin during "health and welfare" inspection). Furthermore, the inspection was random and routine and encompassed appellant's unit. Appellant merely sought to preclude discovery of her recent drug use; such action does not support an obstruction-of-justice charge. *United States v. Asfeld,* 30 MJ 917, 928 (ACMR 1990); *United States v. Gray,* 28 MJ 858, 861 (ACMR 1989). We agree with the Army Court of Military Review, which stated in *Asfeld:*

> [A]lthough the offense is referred to as "obstruction of justice," the gravamen of the offense is the corruption of the "due administration" of the processes of justice and not simply the frustration of justice in the abstract sense.

30 MJ at 926. Appellant's conduct can best be termed as willful disobedience of an order, in violation of Article 92, UCMJ, 10 USC § 892. *Cf. United States v. Layne,* 29 MJ 48 (CMA 1989).

The decision of the United States Army Court of Military Review is reversed as to Charge II and its specification and the sentence. The findings of guilty thereon are set aside and Charge II and its specification are dismissed. The record of trial is returned to the Judge Advocate General of the Army for submission to that court for reassessment of the sentence based on the remaining findings of guilty.

Senior Judge EVERETT concurs.

SULLIVAN, Chief Judge (dissenting):

I agree with the majority opinion that, at the very least, appellant's conduct could have been charged as an order's violation under Article 92, Uniform Code of Military Justice, 10 USC § 892. *See generally United States v. Epps,* 25 MJ 319, 322–23 (CMA 1987). However, this was a guilty-plea case and, in view of the broad scope of the military offense of obstruction of justice (*see* para. 96c, Part IV, Manual for Courts–Martial, United States, 1984), I would affirm the decision of the United States Army Court of Military Review. 30 MJ 984 (1990). *See United States v. Harrison,* 26 MJ 474 (CMA 1988); *United States v. Johnson,* 26 MJ 415 (CMA 1988).