**UNITED STATES, Appellee,**

v.

**Sergeant Paul T. FINSEL, Jr., 417–11–0968, United States Army, Appellant.**

**ACMR 9001841.**

U.S. Army Court of Military Review.

4 Sept. 1991.

For Appellant: Captain Timothy P. Riley, JAGC, Captain Michael P. Moran, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Thomas E. Booth, JAGC, Major Paul E. Jordan, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, the appellant was convicted of conspiracy to obstruct justice, violation of a lawful order (two specifications), failure to obey a lawful general order, negligently suffering the loss of military property, and obstruction of justice, in violation of Articles 81, 92, 108, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 908, and 934 (1982) [hereinafter UCMJ], respectively. A military judge sitting as a general court-martial sentenced him to a bad-conduct discharge, confinement for twenty months, forfeiture of $500.00 pay per month for twenty months and reduction to Private (E1). The convening authority approved the sentence.[1] Sergeant Finsel asserts, *inter alia,* that the evidence is legally insufficient to support his conviction of obstruction of justice, conspiracy to obstruct justice, and violation of a general order. We disagree.

### I.

This case arose during military operations in the Republic of Panama, during Operation Just Cause. The evidence at trial showed that the appellant, a light infantry squad leader, deployed with the 7th Infantry Division on 19 December 1989. On the evening of 25 January 1990, his company was located in a business-residential area of Panama City. The appellant and two soldiers were drinking alcoholic beverages in the company area. The appellant suggested they find a brothel for more drinking and an evening of pleasure,

---

1. This case is a companion case to *United States v. Gussen,* 33 M.J. 736 (A.C.M.R. 1991). Like *Gussen,* this case involves an issue of the legal sufficiency of the obstruction of justice and con-spiracy to obstruct justice offenses. However, unlike *Gussen,* Sergeant Finsel contested all charges. Also, the offense of failing to obey a general order was not charged in *Gussen.*

despite a no-drinking order issued by the brigade commander and despite an order from the company commander not to leave the company command post area without proper authorization. In order to leave the area, the appellant falsely represented to the platoon sergeant that they were going to a nearby McDonalds restaurant for some food. Having obtained his permission, they instead went to a bar down the street from the company headquarters. They took their weapons with them. The appellant was armed with both an M–16 rifle and a 9mm pistol.[2] At the bar, the appellant ordered a beer and got into a discussion with two Panamanian men. During the discussion, the appellant took the pistol from his holster and placed it on the table in front of himself and the two men. Shortly thereafter, a disturbance arose and the appellant left the table to investigate. When he returned, the pistol and the two Panamanians were gone. A frantic search of the area ensued. When the search proved fruitless, the appellant devised a plan to cover up the loss of the pistol by staging a "firefight." He discussed his plan with one of his two companions. All three went outside and began shooting into the air; shouting that they were being fired upon.[3] A reaction force from their infantry company came to their rescue. A short time later, the appellant began firing wildly at a three-story building, claiming he had seen some men on the roof firing at him. To several of his fellow noncommissioned officers, the appellant appeared to be slurring his words and was "freaked out" or drunk. During this second round of gunfire, a Panamanian woman was fatally wounded by another soldier. A search of the three-story building and the surrounding area revealed no evidence whatsoever of hostile Panamanians or of hostile gunfire, although a number of soldiers and Panamanian witnesses believed they were under hostile fire. The violation

of orders, loss of the firearm, and the subsequent coverup led to the charges and the appellant's conviction.

## II.

■ The evidence is legally sufficient to support the offenses of conspiracy and obstruction of justice under our rationale set out in *Gussen*. Private Gussen, testifying against Sergeant Finsel under a grant of immunity, and other evidence of record provided sufficient evidence of Sergeant Finsel's knowledge and intent in staging the firefight. We hold that the evidence is factually sufficient to support the appellant's conviction of obstruction of justice. Likewise, the evidence is legally and factually sufficient to show the existence of a conspiracy to obstruct justice and the appellant's part in it.

## III.

■ The appellant was charged with disobeying a lawful command from Major General Cavezza, his superior commissioned officer, "to not chamber rounds in his weapon unless necessary for self-protection or the protection of others," in violation of Article 90, UCMJ. He was convicted of failing to obey a lawful general order of Major General Cavezza, "to wit: to not chamber rounds in his weapon unless necessary for self-defense or the protection of others, by wrongfully chambering rounds in his weapon," in violation of Article 92, UCMJ. The appellant asserts that the evidence is legally insufficient to sustain the finding of guilty of violating a general order under Article 92(1), UCMJ, because there was no evidence that the rules violated were a general order or were punitive.

Under Article 92(1), UCMJ, an order is a general order if generally applicable to the command of the officer issuing it, and if it is issued by:

---

2. The pistol was the company commander's assigned weapon. Several days prior to the incident, the appellant had been engaged in building clearing operations. Because a pistol was a better weapon in close quarters, the commander had loaned his pistol to the appellant.

3. The task force commander had previously published a letter which, in effect, modified the rules of engagement. The letter forbade the chambering of ammunition and the firing of weapons except under specific limited conditions.

(1) an officer having general court-martial jurisdiction;

(2) a general or flag officer in command; or

(3) a commander superior to (1) or (2). Manual for Courts–Martial, United States, 1984, Part IV, para. 16c(1)(a).

The order shows that Major General Cavezza was a general officer in command of Joint Task Force—Panama. Moreover, the court-martial convening order in this case shows that General Cavezza, in his capacity as Commander of the 7th Infantry Division, was a general court-martial convening authority. We hold that he had authority to issue a general order and that the order was in fact a general order. But that does not end our inquiry. We must also determine if the general order had a punitive effect.

To guide us in making this determination, the Court of Military Appeals has set the following standard:

No single characteristic of a general order determines whether it applies punitively to members of a command. This Court's decisions have established general standards that such an order must meet before a member of the armed forces without actual notice of its provisions can be punished for violating it. The order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application of sanctions for its violation is self-evident. *United States v. Hogsett*, 8 USCMA 681, 25 CMR 185 (1958); *United States v. Baker*, 18 USCMA 504, 40 CMR 216 (1969); *cf. United States v. Benway*, 19 USCMA 345, 41 CMR 345 (1970). If the order requires implementation by subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of an Article 92 prosecution. *United States v. Tassos*, 18 USCMA 12, 39 CMR 12 (1968), and *Unit-*

*ed States v. Woodrum*, 20 USCMA 529, 43 CMR 369 (1971).

*United States v. Nardell*, 45 C.M.R. 101, 103 (C.M.A.1972) (footnote omitted). *Accord United States v. Scott*, 46 C.M.R. 25 (C.M.A.1972); *United States v. Blanchard*, 19 M.J. 196 (C.M.A.1985); *United States v. Gonzalez*, 12 M.J. 747, 750 (A.F.C.M.R.1981); *United States v. Bright*, 20 M.J. 661, 663 (N.M.C.M.R.), *pet. denied*, 21 M.J. 103 (C.M.A.1985); *United States v. Asfeld*, 30 M.J. 917 (A.C.M.R.1990). With this yardstick, we will measure the punitive effect of the division commander's directive, which is attached as an appendix to this opinion.

The task force commander's letter is titled "Weapons Safety." Despite using the term "guidelines" twice, the letter clearly establishes rules regulating individual conduct. No implementation by subordinate commanders was required to give it effect. All that was required of subordinate commanders was dissemination.[4] The letter was in clear and unambiguous "thou shalt not" terms directed to all members of the command. Its meaning is sufficiently lucid to put all members of the command on notice of specific rules of conduct applicable to each member relating to loading and discharge of firearms. We are satisfied that, under the circumstances, the task force commander's letter is directory in nature, and that the appellant's violation of its clear terms is subject to punitive sanctions.

We note that the letter was published under wartime conditions. While some specific references in the letter to the punitive articles of the Uniform Code of Military Justice and to the consequences for violating the order would have been useful, no such warning is required even in peacetime to qualify it as a punitive general order. We certainly will not require such language in wartime. We hold that the evidence is legally and factually sufficient to support the appellant's conviction for violation of its terms.

---

4. The appellant's company commander perceived the letter as an order and had each of his platoon sergeants read it to their platoons. The appellant's platoon sergeant testified that he read the letter to his platoon with the appellant present.

The remaining assertions of error personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge WERNER concur.

APPENDIX

HEADQUARTERS

JOINT TASK FORCE—PANAMA

FORT CLAYTON, PANAMA

19 January 1990

JTF–PM CO (340d)

MEMORANDUM FOR ALL SUBORDINATE COMMANDERS

SUBJECT: Weapons Safety

1. Recent accidental discharges of weapons, one of which resulted in a soldier's death, makes it imperative for me to establish the following guidelines:

a. No one is authorized to maintain a clip in their pistol, a magazine in their rifle (M–16 or AR 203), or a belt of ammunition linked to the feed tray of a M–240 SAW, M–60 MG, or Cal. 50 MG, unless so directed by a commander at the colonel level or higher.

b. Clips will be placed in pistols, magazines will be placed in rifles, and ammunition belts attached to feed trays only when required by operational necessity, e.g., the knowledge that criminal or enemy contact is probable.

c. Under no circumstances will U.S. Army forces be authorized to chamber a round of ammunition unless enemy and/or criminal contact is imminent. Even then, the weapon will remain on safe until visual sighting of the target has been made.

d. Only commanders in the rank of colonel can authorize fragmentation grenades to be carried, and then operational necessity must clearly warrant the carrying and use of those indiscriminate weapons. All fragmentation grenades will be turned in to the ASP and drawn only when colonel-level commanders so direct.

2. These drastic measures are being taken to ensure that we safeguard lives, both U.S. and Panamanian. Our casualties during the last two weeks have all been self-inflicted. This must stop!

3. Commanders at every level must take immediate action to disseminate these guidelines. My intent is simple. I want no one killed or wounded as the result of an accidental discharge of a weapon. I expect everyone's full support.

/S/ Carmen J. Cavezza
CARMEN J. CAVEZZA
Major General, U.S. Army
Commanding General