UNITED STATES, Appellee,

v.

Billy E. ATHEY, Captain U.S. Marine Corps, Appellant.

No. 66,370
NMCM 90–0446.

U.S. Court of Military Appeals.

Argued Oct. 4, 1991.

Decided Jan. 27, 1992.

For Appellant: *Lieutenant Ruth M. Medeiros*, JAGC, USNR (argued).

For Appellee: *Colonel T.G. Hess*, USMC (argued); *Commander Thomas W. Osborne*, JAGC, USN and *Major Rose Marie Favors*, USMC (on brief).

## Opinion of the Court

EVERETT, Senior Judge:

A general court-martial with members convicted Captain Athey, contrary to his pleas, of conduct unbecoming an officer by committing an indecent act (4 specifications), committing an indecent act, and obstruction of justice, in violation of Articles 133 and 134, Uniform Code of Military Justice, 10 USC §§ 933 and 934, respectively. The court members sentenced him to a dismissal from the service. The convening authority approved these results, and the Court of Military Review affirmed in an unpublished opinion dated February 15, 1991.

On appellant's petition, this Court granted review to consider his challenge to his conviction for obstructing justice. 33 MJ 158. On one asserted ground, we agree, so we will order that finding set aside.

## I

Ina Webb, a dependent wife of a Marine sergeant, was a civilian employee under Athey's supervision. At a party on June 3, 1989, at which appellant, Ms. Webb, and her husband were guests, appellant accosted her in a bathroom and fondled her breasts. She made no complaint about the incident. Athey initiated sexual encounters on several other occasions over the next few weeks. The prosecution's evidence indicates that, each time, appellant was the aggressor and, indeed, was often humiliating in his attitude and demeanor toward Ms. Webb. Moreover, the evidence portrays Ms. Webb as a woman who, while physically complying with appellant's demands, was emotionally and psychologically distraught over them.

On July 13, Athey received a letter that indicated the writer knew about appellant's sexual activities with an unnamed female office employee; the letter warned appellant to stop, or the writer would inform appropriate authorities. Although the letter was unsigned, the signature block read, "OFFICE OF COMPLAINTS, COUNTY COURTHOUSE, BEAUFORT SC 29902." The typewritten return address on the envelope in which the letter arrived read, "District Attorney [sic] Office, 1214 King St., County Courthouse, Beaufort SC 29902." Notwithstanding this apparent attempt to portray officiality, the letter itself appeared on ordinary paper with no letterhead; and the text of the letter contained dozens of errors of grammar and punctuation.

The following day, Athey confronted Ms. Webb about the letter and asked whether she had any complaints about his treatment of her. She responded that she had not written the letter (although, in fact, it was based on information she had provided a sergeant who was the letter's author) and that she had no complaints about his conduct.

Thus assured, appellant later that day took the letter to the provost marshal, who directed the Criminal Investigation Division (CID) to open an investigation into the let-

ter. At the outset, Staff Sergeant Cannon of CID interviewed appellant, as "the complainant concerning this anonymous letter that was delivered to him," and thereafter he kept appellant apprised of the progress of the investigation.

Over the next month and a half, the CID—with Athey's knowledge and cooperation as Ms. Webb's supervisor—interviewed her about the letter. Although during the first interview she "denied all allegations set forth in the letter that was addressed to Captain Athey," she later approached Cannon and revealed to him appellant's "sexual improprieties." Thereupon, an investigation into Athey's conduct was undertaken by the Naval Investigative Service (NIS).

The incident giving rise to the charge of obstructing justice occurred on August 24. The following testimony of Ms. Webb under questioning from the prosecutor relates what happened:

Q. Ms. Webb, I want to direct your attention to 24 August 1989. Were you wearing a wire [a CID recording device] on that day?

A. Yes, I was.

Q. Did you see the Accused on that day?

A. Yes, I did.

Q. Where was that at?

A. It was in Captain Athey's office. It was a little after one, when I went into his office to talk to him about why Staff Sergeant Cannon [of the CID] wanted to speak with me again. That was the nature of the conversation. Captain Athey, after I asked why Staff Sergeant Cannon wanted to speak with me, said that he did not know why. He asked me to have a seat. When I came in, I asked if I could close the door. After I had a seat, I went on to tell Captain Athey that I would have to tell someone about this; number one being, my husband; and, what was I supposed to tell him, especially, feeling the way that I felt; and, knowing that I had denied it previously. Captain Athey asked me why I would have to tell anyone.

Q. Was this on the 23rd of August or the 24th of August?

A. Pardon me?

Q. What day was this?

A. The 24th of August. *He went on to tell me that no one knew about the things that had happened; and, so why tell them. Nobody knew.* I asked him about the deli. I said "What about the deli?"; and, he said that probably somebody knew that we were back there, but they didn't know what had happened. He went on to say how nice a person I am; and, that I have good intentions; and, that he knew that it was rough for me to talk with the NIS and CID agents; and, that he wished he could be me, so that he could handle them a little better because he did that for a living; and, that it would be easier for him; and, he sympathized with me.

Q. What did he ask you to do, Ms. Webb, on the 24th of August?

A. If CID ever asked if there was ever anything between he and I, of a sexual nature, to say "No, there wasn't. There was not anything of a sexual nature between he and I." *He told me that he didn't think CID was concerned with he and I, at this time. It was the letter that they were concerned about. That they did not know anything; and, that I had to remember that I knew everything; that, nobody knew a thing about what had happened....*

Q. Did he make you promise to do anything?

A. Yes, sir, he did.

Q. What was that?

A. He said, "Now promise me, look me in the eye, and promise me that you won't say, that you won't tell what happened."

(Emphasis added).

## II

### A

Specification 3 of Charge III alleged that appellant,

on or about 24 August 1989, *knowing that Criminal Investigation Division (CID) had commenced an investigation into allegations of sexual misconduct toward Ina D. Webb,* wrongfully endeavor[ed] to prevent communication to CID of information relating to those allegations of sexual misconduct, by asking Ina D. Webb not to tell CID the truth about the previous sexual encounters between himself and Ina D. Webb—such communications by Captain Athey having been *made with the intent to impede a criminal investigation* and the due administration of justice.

(Emphasis added.)

After arraignment, defense counsel moved to dismiss this specification on the ground that the alleged obstruction—appellant's urging Ms. Webb to lie to the CID about their relationship—occurred between accomplices and was a part of the original conspiracy. *See United States v. Williams,* 29 MJ 41 (CMA 1989). The Government responded that, assuming *arguendo* that the two were accomplices, this communication to Ms. Webb "by the accused did not embrace one of the objects of the original conspiracy inasmuch as there was no agreement between them, express or implied, oral or written, about not disclosing the nature of their relationship." The Government asserted, "There was never any agreement between the accused and Ms. Webb contemporaneous with the commission of the sexual offenses that they were not going to disclose their relationship."

After hearing testimony from Ms. Webb and argument from both counsel, the military judge ruled:

> For the purposes of this motion, even if I were to consider Ms. Webb to be an accomplice to some of these alleged incidents of misconduct which have resulted in the charges against Captain Athey, I do not find that there was an agreement between the parties not to reveal these incidents.

Accordingly, I ... will deny the Defense's motion to dismiss those Specifications.

Appellant reasserts his accomplice theory in this Court. In reply, the Government contests both that Ms. Webb was an accomplice and that she expressly or impliedly agreed as part of the original conspiracy to lie about her relationship with Athey if she were asked. *See United States v. Williams, supra; United States v. Guerrero,* 28 MJ 223 (CMA 1989).

### B

■ Chapter 73 of Title 18, United States Code, is entitled "Obstruction of Justice" and proscribes a variety of crimes, *see* 18 USC §§ 1501–17. Under the third clause of Article 134 of the Uniform Code of Military Justice, a servicemember may be tried for any of these crimes. As we have long recognized, however, a servicemember also may be prosecuted under the first two clauses of Article 134 for obstruction or interference with the administration of military justice, independent of other federal statutes. *United States v. Turner,* 33 MJ 40 (CMA 1991); *United States v. Long,* 2 USCMA 60, 6 CMR 60 (1952). Such a prosecution is not preempted by the existence of a similar crime under Title 18; and, in such a prosecution, a court-martial is not bound by the interpretation of a similar federal obstruction-of-justice statute. Thus, we held in *Williams* that an accused servicemember "can obstruct justice by encouraging an accomplice not to testify or otherwise cooperate with authorities," even though such conduct might not be an adequate basis for conviction of obstructing justice if the accused were tried in a federal district court. 29 MJ at 42.

■ Judge Cox pointed out in *Turner* that the Manual for Courts–Martial sets out the following elements of the offense of obstruction of justice in a prosecution under the first two clauses of Article 134 as "generally recognized" in military law ...:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 96b, Part IV, Manual for Courts–Martial, United States, 1984. *See also United States v. Guerrero, supra* 28 MJ at 226–27. There is nothing in these elements which prevents the accused himself from being the "certain person against whom [he] had reason to believe there were or would be criminal proceedings pending." Thus, Captain Athey could be found guilty if he were seeking to impede criminal proceedings against himself—rather than against someone else. *See United States v. Guerrero, supra.*

■ In the present context Ms. Webb probably should not be considered his "accomplice" so much as the victim of his sexual harassment, even though she might be his "accomplice" for the purpose of framing an instruction as to her credibility. *United States v. McKinnie,* 32 MJ 141 (CMA 1991). Even if she were his accomplice—and despite a different interpretation of federal obstruction-of-justice statutes—Athey could be convicted of obstructing justice by seeking to prevent her testimony unless, as part of the original conspiracy,[1] Athey and Ms. Webb had agreed to lie to any official who might ask about their relationship during some future criminal investigation. *United States v. Williams, supra.* We doubt that any purported conspiracy included such an agreement.

■ At the time when Athey urged Ms. Webb to lie if asked about their relationship, no charges had been referred to a court-martial or even alleged. It is unnecessary, however, that charges be pending or even that an investigation already be underway. The requirement is that the accused "had reason to believe there were or *would be* criminal proceedings pending" against himself or some other person. Para. 96b(2). *See United States v. Guerrero,* 28 MJ at 225 (conviction for obstructing justice upheld where, after a hit-and-run accident in which accused was driving his car, he told his passengers "to lie to the military police and say that the car had been stolen ... *because he believed that some law enforcement official of the military ... would be investigating his actions* " (emphasis added)).

■ Other questions remain in determining whether the government evidence sustains the crime as alleged. First, the anonymous letter had not named the female employee whom appellant had supposedly harassed; so Captain Athey did not know that the CID "had commenced an investigation into allegations of sexual misconduct *toward Ina D. Webb*." (Emphasis added.) Moreover, contrary to the implication of this language in the specification, the CID investigation was into the reason for a false accusation against Athey, rather than into appellant's misconduct. Is this variance fatal? Our answer is in the negative, although we believe this discrepancy between allegation and proof is a circumstance to be considered, along with others, in deciding sufficiency of the evidence.

Secondly, there is little evidence that, when he was being recorded by Ms. Webb, appellant had any idea that the result of the investigation would be a criminal proceeding against himself; otherwise, it is unlikely that he, himself, would have requested the investigation. Of course, the Manual sets forth an objective standard of "reason to believe," rather than subjective

---

1. Since only appellant and Ms. Webb were involved in the indecent acts of which Captain Athey also was convicted, Wharton's Rule might affect the Government's ability to prosecute appellant for conspiracy. *See United States v. Crocker,* 18 MJ 33, 37–40 (CMA 1984).

belief. Para. 96b(2). With some logic, it might be argued that a reasonable person would have believed that an investigation into who wrote the anonymous letter ultimately would lead to some type of inquiry into the *substance* of the letter. If so, then there might arguably be reason for Athey to believe that the investigators, as part of their investigation into why the letter was written, would ultimately unearth evidence that would lead to his being prosecuted for sexual misconduct and harassment.[2]

■ Assuming, arguendo, that the evidence is sufficient in this regard, we still must ask whether appellant's "act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice." Para. 96b(3). The word "intent" seems concerned with an accused's actual state of mind—rather than the mental state of a hypothetical reasonable person. Thus, it imposes a subjective requirement. In the present context, we believe that the words "due administration of justice" contemplate justice as administered in criminal proceedings. This language, then, requires an "intent" to obstruct a potential criminal proceeding.

Therefore Captain Athey could not entertain the requisite "intent" unless he, at least, surmised that there was a possibility that, at some time, a criminal proceeding might take place and he wished to prevent such a proceeding. Someone who never even foresees that a criminal proceeding may take place cannot intend to obstruct it.

■ Insofar as we can determine from the testimony of Ina Webb—including the colloquy quoted earlier—this was Athey's situation at the time of the "wired" discussion with Ms. Webb. Thus, his ignorance of peril ironically becomes a matter of defense.

Of course, some of Athey's recorded comments to Ms. Webb disclose his realization that, if she revealed his misconduct, a prosecution might be forthcoming. However, this situation is only slightly different from that which exists when any crime has been committed and one person asks the other not to reveal the crime. To hold that obstruction exists under such circumstances, without more, would broaden liability for obstruction of justice beyond its traditional scope in military law. Thus, under the unique facts of this case, we hold that the obstruction finding cannot stand. *Cf. Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### III

Although the obstruction finding must be set aside and the specification dismissed, we are satisfied that, even in the absence of this finding, the members would have adjudged a dismissal from the service as punishment for the remaining crimes. *See generally United States v. Sales*, 22 MJ 305 (CMA 1986).

The decision of the United States Navy–Marine Corps Court of Military Review is reversed as to specification 3 of Charge III. The finding of guilty thereon is set aside and that specification is dismissed. In all other respects the decision below is affirmed.

Judge COX concurs.

Judges CRAWFORD, GIERKE, and WISS did not participate.

SULLIVAN, Chief Judge (concurring in the result):

The facts of this case demonstrate a continual course of sexual misconduct by appellant and Ms. Webb. They also establish a continuous agreement between them to remain silent about their activities. Under *United States v. Williams*, 29 MJ 41 (CMA 1989), a conviction of obstruction of justice

---

**2.** Probably the most likely author of such a letter would have been a civilian employee—who, of course, could not be court-martialed. However, if Athey were seeking to impede an intended State or Federal criminal proceeding, such conduct would fall within the first two clauses of Article 134, Uniform Code of Military Justice, 10 USC § 934. On the other hand, intent to impede some type of administrative proceeding—military or civilian—would not suffice to permit conviction of the obstruction offense.

cannot be sustained in these circumstances. Absent evidence of such an agreement, however, I am convinced that a finding of guilty for obstruction of justice might be sustained in this case. For purposes of intent, I am reluctant to equate the absence of any knowledge of an investigation into the charged crimes with knowledge of an investigation into a closely related matter.