UNITED STATES, Appellee,

v.

Paul T. FINSEL, Jr., Sergeant
U.S. Army, Appellant.

Nos. 67,384.
CM 9001841.

U.S. Court of Military Appeals.

Argued Oct. 1, 1992.
Decided April 29, 1993.

For Appellant: *Captain Timothy M. Lawlor* (argued); *Lieutenant Colonel James H. Weise* and *Captain Michael P. Moran* (on brief).

For Appellee: *Captain Jane F. Polcen* (argued); *Lieutenant Colonel Daniel J. Dell'Orto* and *Major Edith M. Rob* (on brief); *Lieutenant Colonel Joseph A. Russelburg.*

*Opinion of the Court*

COX, Judge:

We are called upon to decide whether the facts of this case support a conviction for the offenses of obstructing justice and conspiracy to obstruct justice under Articles 134 and 81, Uniform Code of Military Jus-

tice, 10 USC §§ 934 and 881, respectively.* For reasons set forth below, we hold the evidence as developed in this record of trial was legally sufficient to sustain the findings of guilty. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

On December 20, 1989, the 7th Infantry Division (Light) deployed to the Republic of Panama as part of Operation Just Cause. Appellant's unit, Bravo Company, 5th Battalion of the 21st Infantry, 2d Brigade, was part of this deployment. Upon its arrival, Bravo Company acted to relieve a Ranger battalion and conducted a number of operations, such as handling prisoners of war, processing weapons caches, and conducting stability and civil affairs operations.

As Operation Just Cause progressed, Bravo Company entered Panama City early in January of 1990 and occupied the "Jose Moscote School" located in the Rio Bajo sector of Panama City. Bravo Company's operations at the school included running patrols through the surrounding neighborhoods, collecting weapons from civilian personnel, and operating road blocks. Standing orders for the company forbade any unit member from leaving the command post area (the school grounds) without proper authorization and appropriate explanation.

On the 25th of January, 1990, Bravo Company maintained its position at the school. After the evening meal, appellant and Privates First Class Gussen and McMonagle gathered in a lesser-used room within the school to drink alcohol and play cards. A short time later Gussen and McMonagle asked appellant if he would accompany them to the McDonald's Restaurant. As the Court of Military Review reported it:

> The appellant suggested they find a brothel for more drinking and an evening of pleasure, despite a no-drinking order

issued by the brigade commander and despite an order from the company commander not to leave the company command post area without proper authorization. In order to leave the area, the appellant falsely represented to the platoon sergeant that they were going to a nearby McDonalds restaurant for some food. Having obtained his permission, they instead went to a bar down the street from the company headquarters.

33 MJ 739, 740–41 (1991).

Per orders, the three left the school together in full battle uniform, each toting an M–16A2 rifle; appellant was further equipped with the company commander's 9mm Barretta pistol. Appellant had proper possession of the pistol because the commander thought that some operations called for the lesser firepower of such a side arm, as opposed to the M–16A2. They entered the bar and made their way to the back, whereupon one of the two privates accompanied a prostitute into another back room. Appellant remained in the bar talking with the locals. After approximately 10 minutes, the private returned.

During this time, the soldiers began feeling uneasy about their actions and the position they occupied in the bar among the Panamanian nationals; this unfamiliarity and uneasiness lessened their sense of security. Appellant at one point, whether to calm the privates or in a show of force to the locals, removed the 9mm Barretta pistol from the holster and placed it on the table. Unfortunately, it was at about this time that word spread through the bar that military police officers were outside. In a panic, the three collected their gear and moved to the back room of the bar to wait until the coast was clear. The pistol, however, was inadvertently left on the table.

In the back room, while the three awaited the passing of the military police, appel-

---

* As framed by appellant, the granted issue asks: WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN THE FINDINGS OF GUILTY AS TO SPECIFICATION 1 OF CHARGE III, ALLEGING OBSTRUCTION OF JUSTICE, AND ADDITIONAL CHARGE I AND ITS SPECIFICATION, ALLEGING CONSPIRACY TO OBSTRUCT JUSTICE, WHERE THE ALLEGED OBSTRUCTION WAS A MERE ATTEMPT TO CONCEAL A CRIME PRIOR TO ITS DISCOVERY BY THE AUTHORITIES.

lant remembered the pistol; but by then it had disappeared. Another panic ensued, with appellant searching for the pistol, ordering his privates to search, and questioning patrons of the bar on the whereabouts of the pistol. The panic then spilled out into the bar's parking lot and the street, where appellant began stopping and searching cars; however, the pistol was nowhere to be found.

At this moment a foolish and ultimately tragic decision was made. As the three were searching the street, appellant and McMonagle began discussing the merits of staging a "firefight" to account for the loss of the weapon. Suddenly, appellant commenced firing his rifle into the air; McMonagle and Gussen followed suit. They shouted that people were shooting at them. The Court of Military Review described what resulted as follows:

> A reaction force from their infantry company came to their rescue. A short time later, the appellant began firing wildly at a three-story building, claiming he had seen some men on the roof firing at him. To several of his fellow noncommissioned officers, the appellant appeared to be slurring his words and was "freaked out" or drunk. During this second round of gunfire, a Panamanian woman was fatally wounded by another soldier. A search of the three-story building and the surrounding area revealed no evidence whatsoever of hostile Panamanians or of hostile gunfire....

33 MJ at 741.

After the shooting was over, appellant stepped forward and reported the pistol missing. He claimed that the loss occurred during the firefight, making no mention of the visit to the bar or his negligent loss of the pistol.

In addition to obstructing justice and conspiracy charges, appellant was convicted of violating lawful orders (two specifications); failing to obey a lawful general order; and negligently suffering the loss of military property, violations of Articles 92 and 108, UCMJ, 10 USC §§ 892 and 908, respectively. He was sentenced to a bad-

conduct discharge, confinement for 20 months, partial forfeitures, and reduction to Private (E1). The convening authority approved the adjudged sentence, and the Court of Military Review affirmed. This Court granted appellant's petition for further review to decide whether the evidence supported a conviction for obstruction of justice and conspiracy to obstruct justice under Articles 134 and 81.

### Obstruction of Justice

The military offense of obstructing justice is framed under the general article, Article 134, and has these elements:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done *with the intent to influence, impede or otherwise obstruct the due administration of justice;* and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 96b, Part IV, Manual for Courts-Martial, United States, 1984 (emphasis added).

Presumably, most who commit crimes would prefer not to be caught, and many undoubtedly take steps to avoid detection. But merely committing a crime in such a way as to avoid detection does not automatically trigger liability for the additional charge of obstructing justice. Admittedly, the line separating the end of the principal offense from the beginning of obstruction of justice is often difficult to discern. Therefore, each offense must be resolved on a case-by-case basis, considering the facts and circumstances surrounding the alleged obstruction and the time of its occurrence with respect to the administration of justice.

Under our jurisprudence, it has been held that the offense can occur absent

formal charges. *United States v. Jones,* 20 MJ 38 (CMA 1985); *United States v. Ridgeway,* 13 MJ 742 (ACMR 1982); *United States v. Chodkowski,* 11 MJ 605 (AFCMR 1981), *aff'd on other grounds,* 14 MJ 126 (CMA 1982). Further, an obstruction during an investigation is sufficient to constitute the offense. *United States v. Tedder,* 24 MJ 176 (CMA 1987); *United States v. Daminger,* 30 CMR 826 (AFBR 1960), decision after *rehearing,* 31 CMR 521 (AFBR 1961), *pet. denied,* 12 USCMA 748, 31 CMR 314 (1961). In addition, we have held that obstructing justice can occur where the accused "believed that some law enforcement official of the military ... *would be* investigating his actions" and he elicited the aid of others to conceal his crime. *See United States v. Athey,* 34 MJ 44, 48 (CMA 1992), *quoting United States v. Guerrero,* 28 MJ 223, 225 (CMA 1989). "[T]here is no requirement that a proceeding be pending in fact." *United States v. Asfeld,* 30 MJ 917, 926 (ACMR 1990), *citing United States v. Jones,* 20 MJ 38, 40 (CMA 1985).

The federal offense of obstructing justice, albeit arising under a different statutory scheme, is similar in that it can arise before an investigation or formal proceedings have been instituted. *United States v. Leisure,* 844 F.2d 1347, 1364 (8th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988).

In *United States v. Athey, supra,* the accused, who was charged with sexual misconduct, urged a civilian employee to lie to Marine Criminal Investigation Division (CID) agents about information regarding the misconduct. 34 MJ at 47. Although no investigation had begun, Athey realized that, if the civilian employee disclosed his misconduct, "prosecution might be forthcoming." This Court found little difference between the facts of *Athey* and a situation where a "crime has been committed and one person asks" another "not to reveal the crime." *Id.* at 49. An obstruction does not occur then, so Athey's obstruction charges were set aside as he did not have reason to believe that criminal prosecution would be pending.

■ In its decision below, the Court of Military Review relied on the rationale of the companion case, *United States v. Gussen,* 33 MJ 736 (ACMR 1991). There, the court noted, "[W]here an allegedly obstructionist act anticipates a criminal justice function and is intended to subvert or corrupt that function, '[a]n act may or may not amount to an obstruction of justice, depending upon the circumstances.' " 33 MJ at 738, *quoting United States v. Asfeld,* 30 MJ at 926.

The *Gussen* opinion went on to conclude:

The appellant's admissions during the plea inquiry and the evidence contained in the stipulation of fact clearly establish that the appellant knew that a criminal investigation was not only possible, but highly probable. Loss of a weapon under the circumstances described in the stipulation of fact—in a combat environment and while the appellant was in violation of a command policy—had the potential to affect the brigade's performance of its military mission. Therefore, as the appellant admitted during the providence inquiry, it was likely to have triggered a criminal investigation. In order to prevent the anticipated official inquiry from being initiated, the appellant and his cohorts did more than passively conceal the events that transpired at the Fenix Club. They also conspired to divert attention from their misconduct by actively attempting to prevent what they believed, with good reason, would become a criminal investigation. We hold these facts sufficient to demonstrate subversion or corruption of the administration of justice.

33 MJ at 739 (footnote omitted). We find this rationale persuasive.

■ Regarding the instant case, where a weapon is missing under the circumstances shown here—particularly where the missing weapon is on loan from a superior—the record is sufficient from which rational factfinders could conclude beyond a reasonable doubt that appellant "had reason to believe there were or would be criminal

proceedings pending" and that his actions were done "with the intent to ... obstruct" those proceedings. *See* para. 96b, Part IV, Manual, *supra.* *See also Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Furthermore, the result we reach today is not at odds with this Court's recent opinions in *United States v. Athey*, 34 MJ 44 (CMA 1992), and *United States v. Turner*, 33 MJ 40 (CMA 1991). The Court reached different results there simply because the majority in each of those cases concluded that one or the other of these elements had not been met.

In *Turner*, for instance, the majority observed that the urinalysis in question was part of a unit inspection, which is an administrative exercise that might result in administrative action, not necessarily criminal prosecution. Thus the majority distinguished a unit inspection from a probable-cause search. The majority noted that *"we have no evidence* tending to show that the urinalysis was anything more than 'to ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle.'" 33 MJ at 42 (emphasis added). Accordingly, the majority found Turner's guilty plea to the obstruction specification was improvident because there was no evidence, under the circumstances, that she had reason to believe that criminal proceedings would emanate from that inspection. *Turner* is also factually distinguishable from the instant case in that, had she been successful in concealing her drug use, there would have been no investigation. In appellant's case, in contrast, an investigation was inevitable. Thus, the state of that record led the Court to its conclusion.

Similarly, in *Athey*, the majority concluded that, even if Athey had reason to believe that criminal proceedings were imminent, the record makes clear that *subjectively* he did not hold such a belief. In that light, the majority found that he could not have acted with the "intent to ... obstruct the due administration of justice" required for the offense. 34 MJ at 49. Throughout, the Court has followed an analysis that parallels our approach here.

Returning to this case, we are satisfied, under the circumstances set out above, that there is adequate evidence of record from which rational factfinders could conclude beyond reasonable doubt both that appellant "had reason to believe there were or would be criminal proceedings pending" at some time as a result of his loss of the weapon and that his actions subsequent to the loss were "done with the intent to influence, impede, or otherwise obstruct the due administration of justice." Para. 96b, Part IV.

The decision of the United States Army Court of Military Review is affirmed.

Judges CRAWFORD and GIERKE concur.

WISS, Judge (concurring with reservation):

I concur with the majority opinion except for that minor portion that implies some relevance in the factual difference between this case and *United States v. Turner*, 33 MJ 40 (CMA 1991), relating to whether an effort to obstruct justice attempts to conceal the crime or merely to misdirect the focus of suspicion. 36 MJ at 445. It seems to me that, in either event, the elements of obstruction of justice in military jurisprudence, as set out in the majority opinion, could be met.

SULLIVAN, Chief Judge (concurring in the result):

In *United States v. Athey*, 34 MJ 44, 48 (CMA 1992), this Court expressly held that the military offense of obstruction of justice occurred when an "accused 'had reason to believe there were or would be criminal proceedings pending' against himself or some other person." *See United States v. Guerrero*, 28 MJ 223, 225 (CMA 1989). That principle of law is sufficient to resolve appellant's case. Moreover, its application in the present case is entirely consistent

with my dissenting opinion in *United States v. Turner*, 33 MJ 40, 43 (CMA 1991), and my conclusion that presenting a false urine sample for a urinalysis also constituted the military offense of obstruction of justice.