# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## John R. DENARO,
### Yeoman Third Class (E-4), U.S. Coast Guard

## CGCMG 0205

## Docket No.  1243

## 2 February 2006

General Court-Martial convened by Commander, First Coast Guard District.  Tried at Boston, Massachusetts, on 2-3 December 2004.

| | |
|---|---|
| Military Judge: | CAPT Sharon W. Fijalka, USCG |
| Trial Counsel: | LCDR Luke M. Reid, USCG |
| Assistant Trial Counsel: | LCDR Ronald J. Bald, USCG |
| Civilian Defense Counsel: | Angelo MacDonald, Esquire |
| Detailed Defense Counsel: | LT Kimberly J. Kelly, JAGC, USNR |
| Appellate Defense Counsel: | LT Lynn R. S. Capuano, USCG |
| Assistant Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT D. Sean Baer, USCGR |

## BEFORE
## PANEL EIGHT
## BAUM, TEAL, & FELICETTI
Appellate Military Judges

FELICETTI, Judge:

Appellant was tried by general court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of conspiracy to wrongfully interfere with an adverse administrative proceeding, in violation of Article 81, Uniform Code of Military Justice (UCMJ); one specification of fraudulent enlistment, in violation of Article 83, UCMJ; two specifications of failing to obey a lawful order, in violation of Article 92, UCMJ; one specification of making a false official statement, in violation of Article 107, UCMJ; one specification of wrongfully using marijuana and three specifications of wrongfully possessing some amount of marijuana, in violation of

Article 112a, UCMJ; two specifications of assault, in violation of Article 128, UCMJ; one specification of wrongfully interfering with an adverse administrative proceeding, in violation of Article 134, UCMJ; and five specifications of wrongfully communicating a threat, in violation of Article 134, UCMJ. The military judge sentenced Appellant to a bad-conduct discharge, confinement for twenty-seven months, and a reduction to E-1. The Convening Authority approved the sentence as adjudged but suspended the portion of the sentence extending to confinement in excess of 540 days for a period of one year from the date of his action and waived automatic forfeitures for a period of six months from the date of the action.

Before this Court, Appellant has assigned two errors: (1) that Appellant's pleas to conspiracy to wrongfully interfere with an adverse administrative proceeding in Charge I and to wrongfully interfering with an adverse administrative proceeding in Charge VI were improvident because the military judge failed to elicit facts sufficient to establish that there was or would be an adverse administrative proceeding, and (2) that this Court should consider the unreasonable and unexplained post-trial delay in determining the sentence that should be approved. The first assignment was orally argued to the Court on 18 January 2006.

**Facts**

After announcement of a random urinalysis, Yeoman Third Class Jacqueline Jordan, a coworker selected to provide a sample, approached Appellant. Petty Officer Jordan admitted using cocaine and expressed concern that her sample would test positive. Appellant suggested the use of a masking agent to defeat the pending urinalysis. Both parties went to Appellant's office where he provided a bottle of a masking agent. In providing the masking agent and discussing how to use it, Appellant intended to undermine the urinalysis and prevent Petty Officer Jordan's administrative discharge.

Appellant was tried on charges related to these events, along with other charges, on 2-3 December 2004. The Convening Authority acted on the case on 6 July 2005, 215 days after the sentence was adjudged. Another twenty-nine days passed until the Staff Judge Advocate forwarded the record to the Judge Advocate General. The Staff Judge Advocate attributed the

overall delay to a combination of technical and workload issues along with an error in mailing the original record of trial to the military judge.

**Assignment I**

Appellant asserts that his pleas were improvident because a random urinalysis is not an adverse administrative proceeding. Thus, Appellant's efforts to defeat the urinalysis did not interfere with an adverse administrative proceeding. According to him, he was only trying to help a drug-user avoid detection. While we agree that a random urinalysis is an inspection, not an adverse administrative proceeding, we disagree with Appellant's conclusion.

It is well-settled that a random urinalysis is an inspection – that is, an official examination to determine the fitness or readiness of the person, organization, or equipment. Military Rule of Evidence (M.R.E.) 313(b); *United States v. Turner*, 33 M.J. 40, 41 (C.M.A. 1991); *United States v. Bickel*, 30 M.J. 277, 279 (C.M.A. 1990). Appellant does not allege, and there is no evidence suggesting, that the random urinalysis in question was anything other than a proper unit inspection. He, therefore, directly interfered with an inspection.

It does not necessarily follow, however, that Appellant's efforts to defeat this inspection cannot amount to the offense of wrongful interference with an adverse administrative proceeding. The charge explicitly includes acts done in anticipation of a proceeding. Manual for Courts-Martial (MCM), Pt. IV, ¶ 96a, United States (2002 ed.) ("had reason to believe there was *or would be* an adverse administrative proceeding pending") (emphasis added). No court has held this language improper. To the contrary, our higher Court has declined to disapprove nearly identical language contained within the obstruction of justice offense. *See, e.g.*, *United States v. Turner*, 33 M.J. 40 (C.M.A. 1991); MCM, Pt. IV, ¶ 96. Our higher Court has also cited with approval a conviction for obstructing justice where, after a hit and run accident in which the accused was driving, he told his passengers "to lie to the military police and say that the car had been stolen… because he believed that some law enforcement official of the military would be investigating…." *United States v. Athey*, 34 M.J. 44, 48 (C.M.A. 1992) (citing United States v. Guerrero, 28 M.J. 223, 225 (C.M.A. 1989)). A service member can, therefore, interfere with a

future adverse administrative proceeding, given "reason to believe" there will be one. *See*, MCM, Pt. IV, ¶ 96a.

We do not believe, however, that these broad words of futurity are unlimited. Without the benefit of a decision by our higher Court or the other service courts of criminal appeals on this offense, we draw upon cases considering nearly identical language contained within the obstruction of justice offense. MCM, Pt. IV, ¶ 96 ("had reason to believe there were or would be criminal proceedings pending").

As a threshold requirement, there must be some objective factual basis for the accused's "reason to believe" there will be an adverse administrative proceeding. *Cf. United States v. Armstead*, 32 M.J. 1013 (N.M.C.M.R. 1991). For example, an accused who disrupts an inspection cannot commit the offense of obstruction of justice when it is legally impossible for the inspection to lead to criminal proceedings. *Id.* at 1014-15. This is true even when the accused anticipates a court-martial and intends to obstruct it. *Id*. While *Armstead* involved some very unique circumstances, the underlying reasoning applies to interference with an adverse administrative proceeding. There must be some objective basis for the accused's reason to anticipate an adverse administrative proceeding. We do not believe, however, that the mere possibility of an adverse administrative proceeding is sufficient.

Instead, the link between the inspection results and the anticipated adverse administrative proceeding must be objectively reasonable. *Cf. United States v. Turner*, 33 M.J. 40 (C.M.A. 1991). For example, an accused who interferes with an inspection cannot normally plead guilty to obstruction of justice since an inspection, unlike a search, provides no reasonable basis to conclude that "a certain person" is facing military justice action. MCM, Pt. IV, ¶ 96 ("the accused did so in the case of a certain person against whom…"); *see Turner*, 33 M.J. at 42-43. An inspection may also result in admonitions or administrative actions, instead of a criminal prosecution. 33 M.J. at 41. Therefore, other evidence is required to reasonably link the inspection to the due administration of military justice. This evidence may take the form of a criminal investigation, other criminal proceedings, or other official acts leading to disciplinary action. *Id*. at 42-43. It is not a requirement, however, that charges are pending or even that an

investigation is already underway. *United States v. Athey*, 34 M.J. 44, 48 (C.M.A. 1992). There simply must be some other evidence to establish the objective reasonableness of the accused's "reason to believe" that obstructing an inspection would also obstruct justice, or, in this case, an adverse administrative proceeding. *Cf. Turner*, 33 M.J. at 42-43.

To summarize, we conclude that one may commit the offense of wrongful interference with an adverse administrative proceeding by interfering with a random urinalysis if, after satisfying the other elements, the facts show: (1) an objectively reasonable basis for the accused's "reason to believe there … would be" an adverse administrative proceeding against a certain person and (2) the accused's specific intent to influence, impede, or obstruct it.

An accused's reason to believe there would be an adverse administrative proceeding will normally be closely intertwined with the specific intent to interfere with it. These are, however, separate concepts. Only the accused's subjective "reason to believe" there will be an adverse administrative proceeding must have an objectively reasonable basis. This reasonableness will normally be shown by the underlying facts of each case and the applicable Service regulations, policies, and practices.

The specific intent element addresses the accused's actual state of mind, rather than the mental state of a hypothetical reasonable person. *United States v. Athey*, 34 M.J. 44, 49 (C.M.A. 1992). The accused must intend to influence, impede, or obstruct the adverse administrative proceeding. MCM, Pt. IV, ¶ 96a. Thus, one's extreme ignorance may, in some instances, become a matter of defense. An accused who never surmises a possibility that, at some time, an adverse administrative proceeding might take place cannot intend to interfere with it. *Cf. Athey*, 34 M.J. at 48-49.

Appellant's intent, however, is clearly shown by his responses to the guilty plea inquiry. He knew Petty Officer Jordan had wrongfully used cocaine the weekend before the urinalysis and believed her sample would test positive. He knew that steps leading to her administrative discharge would commence upon receipt of such a test result. Clearly, he sought to prevent the discharge, although he may not have understood the specific administrative steps between the

test result and the ultimate administrative act of discharge. He knew, however, that the administrative process depended on Petty Officer Jordan's urinalysis results, would commence upon receipt of the results, and would conclude with her discharge. Appellant intended to impede this administrative process by falsifying its primary, and probably only, source of data. These facts lead to the compelling inference that Appellant intended to interfere with the administrative actions between the urinalysis and the discharge, even if he did not know precisely what those proceedings would be.

In addition to having the required specific intent, Appellant's reason to believe there would be an adverse administrative proceeding against Petty Officer Jordan was objectively reasonable. *See* Chapters 20.C, 12.B.18 of COMDTINST M1000.6, Personnel Manual (PERSMAN), dated 8 January 1988. Upon receipt of Petty Officer Jordan's urinalysis results, a mandatory drug incident investigation would commence. Chapter 20.C.3.a of PERSMAN ("Commanding Officers shall initiate an investigation into a possible drug incident…."). Moreover, a positive confirmed test result, standing alone, is sufficient to establish intentional use and support a discharge for illegal drug use. Chapter 20.C.3.e of PERSMAN. Given that Petty Officer Jordan had wrongfully consumed cocaine the weekend before the urinalysis, it is more than reasonable to conclude the investigation would find a drug incident. Upon such a finding, Chapter 12.B.18.b.4.a of PERSMAN states: "Any member involved in a drug incident… will be processed for separation from the Coast Guard with no higher than a general discharge."

Appellant argues that the drug incident investigation is not an adverse administrative proceeding due to its neutral fact-finding nature. We disagree. An adverse administrative proceeding includes any administrative proceeding or action "that could lead to a discharge, loss of special or incentive pay, administrative reduction in grade, loss of security clearance, bar to reenlistment, or reclassification." MCM, Pt. IV, ¶ 96a. This is clearly the case with the drug incident investigation and other administrative steps required after a positive urinalysis result. *See* Chapters 20.C, 12.B.18 of PERSMAN. Therefore, Appellant's belief that there would be a discharge, and administrative proceedings leading to that discharge, was objectively reasonable.

It is true that Appellant did, at one point in the providence inquiry, state that the urinalysis was an adverse administrative proceeding. Of course, Appellant's legal conclusions are not binding upon this Court, and the record clearly shows Appellant's goal to prevent an administrative discharge based on illegal drug use. We, therefore, find Appellant's guilty pleas provident.

**Assignment II**

Appellant alleges unreasonable and unexplained post-trial delay which should be considered by this Court in determining what sentence it approves in accordance with Article 66, UCMJ.

An accused has a right to a timely review of his court-martial findings and sentence independent of any request for diligent post-trial processing. *E.g.*, *United States v. Walters,* 61 M.J. 637, 638-39 (C.G.Ct.Crim.App. 2005). Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances reflected in the record, in exercising its responsibilities under Article 66(c), UCMJ. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). We may craft an appropriate remedy, when warranted, whether or not the delay has materially prejudiced the appellant's substantial rights. *Id.* at 224-25.

Our review of the record indicates that a series of events, combined with workload issues, caused much of the delay. The District legal office was using new software recording equipment; a copy of the record, instead of the original, was mailed to the military judge; the defense counsel transferred overseas, slowing document exchanges; and technical problems were encountered while digitizing the record after the action. These were, no doubt, genuine challenges and honest mistakes. Yet, it took 146 days to simply authenticate a fairly short record of trial and an additional twenty-nine days to forward the record to the Judge Advocate General after action by the Convening Authority. We find the overall delay unreasonable and will, therefore, consider it when exercising our sentence appropriateness review under Article 66, UCMJ.

**Decision**

After reviewing the record in accordance with Article 66, UCMJ, the findings and so much of the sentence as provides for a bad-conduct discharge, confinement for 520 days, and reduction to E-1 are determined to be correct in law and fact and, on the basis of the entire record, should be approved. The confinement in excess of 520 days, which includes 280 days of suspended confinement and twenty days of unsuspended confinement, is set aside. Accordingly, the findings of guilty and so much of the sentence, approved below, as includes a bad-conduct discharge, confinement for 520 days, and reduction to E-1, are affirmed.

Chief Judge BAUM and Judge TEAL concur.



For the Court,

Jane R. Lim
Clerk of the Court