## UNITED STATES

v.

**Master Sergeant Dewey L. MORRIS, Jr., FR452–13–1592 United States Air Force.**

**ACM 30299.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 1 Sept. 1992.

Decided 19 Aug. 1994.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, and Captain Del Grissom.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, and Major Barnard N. Madsen.

Before HEIMBURG, SCHREIER, and GAMBOA, Appellate Military Judges.

## OPINION OF THE COURT

HEIMBURG, Senior Judge:

The appellant was convicted, contrary to his pleas, of raping and committing carnal knowledge on his adopted daughter, [M], committing an indecent act by fondling his step-daughter, [N], and obstructing justice by sending M out of state and telling her not to tell anyone about having sex with him. His approved sentence is a dishonorable discharge, confinement for 20 years, forfeiture of all pay and allowances, and reduction to E-1. He has alleged six assignments of error. We conclude the finding of guilty of carnal knowledge cannot stand on appeal, but we affirm the remaining findings and the sentence.

## I. Facts

At the time of the offenses, appellant was married to Pam, his second wife. He had adopted M, his first wife Carol's daughter, during his marriage to Carol. Two other children, a boy and a girl, were also born of his first marriage. When he and Carol divorced, appellant was awarded custody of all three children. Pam had two children, N and a boy, when she and appellant married. All seven lived in a house appellant had built in Victorville, California, a civilian community near George Air Force Base.

The allegations against appellant arose after N reported to her mother, Pam, on the morning of 9 March 1992 that appellant had touched her in the vaginal area the previous night. According to N, appellant came into the bedroom where she was sleeping and put his hand down the back of her underpants. He then pushed her leg away with his hand and touched her vaginal area, rubbing it in a "circular motion." As soon as she learned this from N, Pam telephoned appellant at work and confronted him about the allegations. Appellant came home, and in a face-to-face confrontation with N present he denied any improper touching.

A few days later, Pam testified, she was talking out loud about what happened to N as she worked in the kitchen with her step-daughter, M, at the sink. When Pam said she couldn't believe appellant did "these things," M crossed her arms and said, "Huh." Pam took this to mean she wanted to say something, and asked M whether appellant had ever done "these things" to her. M replied he had. When appellant came home from work, Pam confronted him about the second set of allegations by M. Again he denied everything, even when confronted by M. Pam testified she and appellant talked after letting M go, and appellant eventually admitted he "touched" N and had touched M

in the past. He didn't elaborate about M, Pam said, but told her he had "done some very bad things that he was not proud of, that was real sickening, and that [Pam] probably couldn't handle it if he told [her]."

Pam testified she told appellant she would not turn him in to authorities if he would seek professional help. When he continued for several days to refuse, she told him she wanted a divorce. Finally, on 16 March 1992, when appellant continued to refuse either professional counseling or a divorce, Pam angrily told him she would report him to the authorities.

Appellant left the house immediately after Pam threatened to report him. Pam, without transportation of her own, telephoned a friend to drive her to the base, where she reported the allegations of N and M against appellant. Appellant returned to the house and found Pam was gone. He gathered M and his two other children, packed some of their clothing, and left before Pam returned. Under cross-examination, appellant agreed he left before Pam returned, commenting, "I wasn't waiting around to see." He and the children spent the night at a hotel near the Ontario, California, airport. The next morning appellant put the three children on a flight to Texas, where they were met by one of his relatives.

## II. Rape and Carnal Knowledge

As we noted at the outset, appellant was charged in separate specifications with rape and carnal knowledge of M. Each specification alleged an act "between 1 December 1988 and 31 January 1989" in Victorville, California. No evidence at trial showed more than one act of sexual intercourse between M and the appellant. In two assignments of error, appellant asserts the military judge's findings of guilty of rape and carnal knowledge and the convening authority's approval of the sentence cannot be affirmed because they are inconsistent.

Counsel for appellant made no trial motion or objection concerning the findings. The staff judge advocate's recommendations, which summarized the findings and sentence accurately, did not inform the convening authority that the military judge announced, sua sponte, that he considered the two speci-

fications "multiplicious for sentencing" because they arose "out of the same incident, although the elements are slightly different. . . ." Counsel for appellant now argue that, despite appellant's failure to raise any objections at trial or post-trial, we should find plain error.

■ Plain error is error that is clear or obvious and adversely affects substantial rights. *United States v. Olano,* —— U.S. ——, ——–——, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993). Plain error has three elements: that there is error; that it is obvious based on the law existing at the time of trial; and that substantial rights of the appellant were adversely affected. *Id.,* —— U.S. at ——–——, 113 S.Ct. at 1776–77. We examine each of these elements separately.

■ The issue of whether a person may be convicted of more than one offense arising out of the same act, commonly called "multiplicity," is a question of legislative intent as bounded by the Double Jeopardy Clause of the Fifth Amendment. *United States v. Teters,* 37 M.J. 370, 376 (C.M.A.1993). There is no error in appellant's conviction for both rape and carnal knowledge if Congress intended a servicemember to be subject to conviction for both crimes based on one act of sexual intercourse. *Id.* at 376. The *Blockburger* or "elements" test for determining legislative intent, based on *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is not applicable when there is an "overt expression of legislative intent." *Teters,* 37 M.J. at 376.

Both rape and carnal knowledge are prohibited by Article 120, UCMJ, 10 U.S.C. § 920 (1988). The relevant portions of this article as it applied to appellant read as follows:

(a) Any person subject to this chapter who commits an act of sexual intercourse with a female not his wife, by force and without her consent, is guilty of rape and shall be punished by death or such other punishment as a court-martial may direct.

(b) Any person subject to this chapter who, *under circumstances not amounting*

*to rape,* commits an act of sexual intercourse with a female not his wife who has not attained the age of sixteen years, is guilty of carnal knowledge and shall be punished as a court-martial may direct. (Emphasis added.)

■ Article 120(b), quoted above, does not permit conviction of carnal knowledge where the facts show rape was committed, for the clause specifically states "under circumstances not amounting to rape." This shows the "overt intent" of Congress that no person may be convicted of both rape and carnal knowledge based on the same act of sexual penetration. Conviction of both based on one act is therefore error.

■ Next we consider whether the error is "plain." Interestingly, we found no case on the question of whether both rape and carnal knowledge may be found based on one act. The nearest precedent we found was the Court of Military Appeals decision, in *United States v. Hickson,* 22 M.J. 146 (C.M.A.1986) that a military member may not be found guilty of both rape and adultery based on the same act of sexual intercourse. *Hickson,* however, was not based on the plain language of a statute. We believe the lack of case law shows that the language of Article 120(b) is so clear on its face that it has not been subject to a variety of interpretations. We find error that was "plain."

■ That brings us to the third element of plain error, the issue of prejudice. Counsel for the government argue that there is none in this case because the military judge ruled rape and carnal knowledge "multiplicious for sentencing." This argument overlooks the implications of *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). In *Ball v. United States,* the Supreme Court concluded that a multiplicious conviction in itself carries an element of punishment and is thus impermissible under the Double Jeopardy Clause. Where a person is convicted of more than one offense impermissibly, that is sufficient prejudice for purposes of a finding of plain error.

We conclude that the appellant's conviction of carnal knowledge cannot survive, despite the lack of trial objection by appellant's coun-sel. We will act to remedy this error in our concluding paragraphs.

### III. Obstruction of Justice

Appellant vigorously attacked the findings of guilty of obstruction of justice, on both legal and factual grounds. He argued that the specification did not state an offense because it is not an obstruction of justice to send your children to a relative's home or to tell a child "not to tell" about a crime, citing *United States v. Athey,* 34 M.J. 44 (C.M.A. 1992). Moreover, he argued, the evidence did not show he sent his children out of state or requested M not to tell *wrongfully,* with the *intent* to obstruct justice.

The *Athey* case is no help to appellant's legal attack on the specification. In that case, the question the Court of Military Appeals resolved was one of criminal intent, not the legal sufficiency of the specification. Captain Athey had reported to criminal investigators an anonymous threat made, as it turned out, on behalf of a woman who had been the victim of his sexual misconduct. Military investigators were interviewing persons when they discovered evidence of Captain Athey's prior sexual misconduct. Under "the unique facts" of that case, the Court of Military Appeals concluded there was no evidence which showed Captain Athey was aware of the "possibility that, at some time, a criminal proceeding might take place" concerning his sexual misconduct when he urged the woman to lie to investigators. 34 M.J. at 49. The Court thus reversed his conviction for obstruction of justice, for one who has no idea that criminal justice proceedings might take place cannot have the specific intent to obstruct such proceedings. *Id.*

■ In this case, the evidence shows that appellant was aware of the imminent possibility of criminal justice proceedings against him, at least an investigation into the allegations of M and N, because Pam had just told him she was going to report his acts to authorities before he left the house. As appellant conceded tellingly on cross-examination, he had no intention of "waiting around to see" whether she would make good on her threat. Instead, he went to his unit to get leave, returned to the house, packed the chil-

dren's bags, and took them to a nearby commercial airport. It was at this time he told M "not to tell anybody" about having sex with him. He spent the night at a hotel with the children, then put them on a flight to Texas.

As the Court of Military Appeals has counseled, "each offense must be resolved on a case-by-case basis, considering the facts and circumstances surrounding the alleged obstruction and the time of its occurrence with respect to the administration of justice." *United States v. Finsel*, 36 M.J. 441, 443 (C.M.A.1993). We find the circumstances of this case show appellant had reason to believe a criminal justice investigation into his behavior was imminent. Moreover, we find these acts were not of the type which the Court of Military Appeals in *Athey* called "only slightly different from that which exists when any crime has been committed and one person asks the other not to reveal the crime." 34 M.J. at 49. Here, appellant was not charged with simply asking M not to tell. He first came to the house, told her and her siblings to pack their belongings "for a couple of days," took them to a hotel near the airport, and just before he put them on a flight told M "not to tell anybody because it could hurt him and [she] would bring [her] mother into it." This is the type of behavior which goes significantly beyond simply asking the victim not to tell; it is conduct "prejudicial to good order and discipline and inimical to the effective functioning of military justice." *United States v. Caudill*, 10 M.J. 787, 789 (A.F.C.M.R.1981).

We conclude the evidence is legally and factually sufficient to support the findings of guilty of obstruction of justice.

### IV. Ineffective Assistance of Counsel

Appellant asserts his trial defense counsel rendered ineffective assistance, and requests that we set aside the findings and sentence. In support, he submits a laundry list of supposed pretrial, trial, and post-trial failures. He attacks his counsel for failure to do adequate preparation; for failure to investigate and contact potential witnesses; for failure to prepare appellant adequately for direct and cross-examination; for failure to contest the obstruction of justice charge; for failures in

trial strategy: not calling witnesses on sentencing and not impeaching Pam, N or M in the manner he had instructed; for failure to correct the judge's findings on rape and carnal knowledge; and for failure to correct the record of trial.

█ We begin by observing, as others have done, that it is common for persons after being convicted to turn on their defense counsel and blame their counsel for their predicament. *Cf. United States v. Mansfield*, 24 M.J. 611, 616 (A.F.C.M.R.1987). The person who claims his or her trial defense counsel was ineffective in representation must bear the heavy burden of establishing both serious deficiency in performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Sanders*, 37 M.J. 116, 118 (C.M.A.1993); *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). Ineffectiveness requires more than the errors a fallible lawyer may make in preparing for and trying a case; it amounts to errors so serious that they deprive an accused of "a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d 674.

We have carefully evaluated appellant's complaints and his trial defense counsel's affidavit, which appellate government counsel submitted in response, comparing both with the record of trial. We find no indication that appellant failed to receive a fair trial. Contrary to his assertion, appellant's defense counsel did contest the obstruction of justice charge and his pretrial preparation was not lacking, at least insofar as that preparation is reflected by proficiency in examining and cross-examining witnesses at trial. As for investigation and calling witnesses, we are satisfied trial defense counsel had adequate strategic reasons for pursuing the course he did. On the whole, we find that trial defense counsel vigorously and with telling blows cross-examined witnesses and presented testimony which contested the charges effectively. A disappointing result is not the criterion by which an appellant's trial defense lawyer is to be judged. Judging appellant's counsel by the standard we cited above, we find no ineffectiveness.

## V. Record of Trial

In a supplementary assignment of error, appellant asserts his record of trial is inaccurate in that it shows M crying during direct examination when asked about appellant's attack but does not show her crying when asked about the visit of her grandmother. Appellant has failed entirely to indicate in what manner he has been prejudiced by any inaccuracy.

Article 54(c)(1)(A), UCMJ, 10 U.S.C. § 854(c)(1)(A) (1988), requires a "complete" record of the proceedings and testimony in each general court-martial in which the sentence includes a discharge or confinement in excess of 6 months. The President has promulgated a rule requiring that such a record include a verbatim transcription of "all sessions except sessions closed for deliberation and voting." R.C.M. 1103(b)(2)(B).

▆ The military judge authenticated the appellant's record of trial in accordance with R.C.M. 1104(a)(2)(A). Neither the appellant nor the new defense counsel he hired after trial who submitted his post-trial matters under R.C.M. 1105 and 1106 contested the accuracy of that record. Moreover, there are internal consistencies which tend to confirm the transcript's accuracy. Immediately after the transcript shows M crying, it indicates the military judge granted trial counsel a ten-minute break. In his sentence argument, trial counsel referred to that break, saying "It was painful for [M] to testify. She broke down, we had to recess on her behalf." In the absence of an allegation of fraud, which we have not heard, we will consider the authenticated record of trial to be an accurate and complete record of the proceedings of appellant's court-martial. *See United States v. Galloway*, 2 U.S.C.M.A. 433, 9 C.M.R. 63, 65 (1953). Moreover, in the absence of any indication of prejudice to the appellant, any inaccuracy, if there were one, would be *de minimus*.

## VI. Sentence Severity

Appellant asserts his sentence is unduly severe in light of his lengthy honorable service and the many outstanding personal qualities shown not only by his military service record, but by the letters and exhibits included in his trial record and post-trial clemency submissions.

▆ Sentence appropriateness should be judged by "individualized consideration" of the particular accused "on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). We have so considered appellant's sentence. We believe his adjudged and approved sentence accurately reflects consideration of both his personal character and the nature of his crimes and is not excessively severe.

## VII. Conclusion

We concluded above that the finding of guilty of carnal knowledge could not stand. We will therefore order it dismissed. The military judge considered the two findings of guilty of Charge I to be but one offense for sentence purposes. We have reassessed the sentence in light of the military judge's error in not ordering specification 2 of Charge I dismissed, and believe we can determine the sentence which would have been adjudged without this error. We believe that, without consideration of the finding of guilty of carnal knowledge the military judge would have adjudged and the convening authority would have approved the same sentence. Moreover, we find that sentence to be appropriate. *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A.1990); *United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

The finding of guilty of carnal knowledge, specification 2 of Charge I, is hereby set aside and dismissed. The remaining findings of guilty and the approved sentence, being correct in law and fact, are hereby

AFFIRMED.

Judges SCHREIER and GAMBOA concur.