**UNITED STATES, Appellee**

v.

**Joseph A. LENNETTE, Lance Corporal U.S. Marine Corps, Appellant.**

No. 93–5021.
CMR No. 92 0442.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 9, 1994.

Decided April 7, 1995.

For Appellant: *Lieutenant Commander Howard B. Goodman*, JAGC, USN (argued); *Lieutenant Margie Sampson*, JAGC, USNR (on brief); *Lieutenant Commander Helen B. Thompson*, JAGC, USN.

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Colonel T.G. Hess*, USMC, and *Commander S.A. Stallings*, JAGC, USN (on brief); *Colonel J. Composto*, USMC.

*Opinion of the Court*

WISS, Judge:

1.   Pursuant to appellant's pleas, a special court-martial convicted him of conspiracy to commit larceny, larceny, falsely making military identification cards, and obstruction of justice, *see* Arts. 81, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 921, and 934, respectively.   The military judge then sentenced appellant to a bad-conduct discharge, confinement for 2 months, forfeiture of $500.00 pay per month for 3 months, and reduction to the lowest enlisted grade.   The convening authority approved these results, and the Court of Military Review[1] affirmed in an unpublished opinion.

2.   The Acting Judge Advocate General of the Navy sent this case to this Court for review, certifying the following question for consideration, *see* Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989):

WHETHER THE NAVY–MARINE CORPS [COURT] OF MILITARY RE-VIEW CORRECTLY DETERMINED THAT A THIEF'S DESTRUCTION OF STOLEN IDENTIFICATION CARDS IS THE TYPE OF POST–OFFENSE ACT

---

1.   *See* 41 MJ 213, 229 n.* (1994).

THAT CONSTITUTES OBSTRUCTION OF JUSTICE.

We now answer that question in the affirmative within the context of the facts of this case.

## I

3. As part of his duties in his Marine regiment's personnel office, appellant prepared military identification (ID) cards. In May 1991, Hospitalman Apprentice Labelle approached him about a scheme to steal money by using fake ID cards to set up bogus bank accounts upon which to cash bad checks. Pursuant to their agreement, appellant stole five blank cards and typed false information on two of them, which he gave to Labelle along with one blank card on a later date; appellant himself retained the two remaining blank cards.

4. Unfortunately for the two, the scheme went awry within a week. In appellant's presence, Labelle was caught using one of the fake ID cards to cash a check when the cashier became suspicious while attempting to verify the amount of funds in the bogus account. The military police were summoned, and Labelle was taken into custody and questioned. Appellant was not arrested, however. The next morning, appellant tore up the two blank cards in his possession and threw them into the trash. Unpub. op. at 2.

5. Ultimately, as indicated at the outset, appellant was charged, *inter alia*, with obstruction of justice—specifically, that he did "wrongfully endeavor to impede an investigation in the case of U.S. v. [appellant] by destroying evidence, to wit: 2 Armed Forces Identification Cards." During the providence inquiry, appellant specifically admitted that he had done so "[b]ecause I believed that the two cards would be evidence against me, sir." He explained that, while there was not "an ongoing investigation" of himself at that time, he knew that the police would be "looking into" his "involvement" because he

had been with Labelle. The following brief colloquy brings all this into focus:

MJ: So, whether or not you actually knew, there was no doubt in your mind that they were going to be looking into your involvement; is that what you're telling me?
ACCUSED: Yes, sir.
MJ: Do you believe that if, in fact, the authorities found these blank ID cards in your possession that it could possibly be used against you as evidence?
ACCUSED: Yes, sir.
MJ: Did you believe that whatever it was that they, the authorities, believed you had done, you and Labelle, that it was serious enough that [sic] ultimately would be handled at a criminal proceedings as I have defined that term?
ACCUSED: Yes, sir.
MJ: Court-martial or at least office hours?
ACCUSED: Yes, sir.

## II

■ 6. In the face of these admissions on the record, appellant contends that his plea to obstructing justice was improvident. He does so with the assertion that there is a legal distinction between post-crime actions that are taken merely to avoid detection (characterized by appellant as "acts that simply 'frustrate justice,' "—Final Brief. at 8), on the one hand, and acts committed to obstruct justice in the sense of corrupting the due administration of the processes of justice, on the other. *See United States v. Finsel,* 36 MJ 441, 443 (CMA 1993); *see also* para. 96b(3), Part IV, Manual for Courts–Martial, United States, 1984 (third element of obstructing justice: "That the act was done with the intent to *influence, impede, or otherwise obstruct the due administration of justice* " (emphasis added)). He submits that, where destruction of evidence is involved in the alleged obstruction, the applicable inquiry should be whether "an accused willfully destroy[ed] potential evidence which *has been seized or is otherwise within the authorities' control.* ..." Final Brief at 10.[2]

2. In his brief on the certified issue (*see* pages 8–10), appellant also argues that the Court of Military Review incorrectly applied a subjective standard to the second, objective element of the crime of obstructing

justice: that the accused acted in a certain way "in the case of a certain person against whom *the accused had reason to believe there were or would be criminal proceedings pend-*

7. Appellant's suggestion is without precedent. Counsel has cited us to certain cases involving destruction of evidence in which the evidence in question had been seized by authorities. *See, e.g., United States v. Jones,* 20 MJ 38 (CMA 1985); *United States v. Ridgeway,* 13 MJ 742, 745–47 (ACMR 1982). The earlier seizure of the evidence by authorities, however, simply was a fact coincident in those cases; nothing in any opinion from this Court and nothing in the elements of this offense under Article 134 that are set out by the President in the Manual for Courts–Martial can fairly be read to draw such an arbitrary line. *See* para. 96b. *See also United States v. Gravely,* 840 F.2d 1156, 1160 (4th Cir.1988) (under Federal obstruction statute, it is not necessary that documentary evidence allegedly destroyed was then "under subpoena"; "it is sufficient if the defendant is aware that the grand jury will likely seek the documents in its investigation").

8. This Court is aware of the potential conceptual ambiguity between the notion of whether an act was taken as an effort by the accused to avoid detection or whether it was taken in an effort to corrupt the due administration of the processes of justice. In *Finsel,* however, we acknowledged not only that there is a distinction between these actions when charged as obstructing justice, but also that the answer to the dilemma must be found "on a case-by-case basis, considering the facts and circumstances surrounding the alleged obstruction and the time of its occurrence with respect to the administration of justice." *Id.* at 443.

9. Appellant, echoing the sentiments in the separate opinion of Judge Lawrence in this case in the Court of Military Review, argues that this amounts to no standard at all. *See* unpub. op. at 5. To make his point, appellant asks us to "[c]onsider (1) the robber who wears a mask to hide his identity from the authorities, (2) the murderer who wipes his fingerprints off the murder weapon, (3) the thief who changes the license plates on the 'getaway' car, and (4) the criminal who removes the serial number from his gun." Final Brief at 9. He submits that under *Finsel* and the decision below, all might be guilty of obstructing justice.

■ 10. Without yielding to the temptation to joust in the abstract, we suggest that appellant's hypothetical situations are, themselves, solid evidence of the merits of *Finsel.* With some minimal creativity, one can easily conjure up factual circumstances in which, in particular contexts, the culprit's actions might be simply covering his tracks or, instead, might fall within the scope of obstruction of justice. We can do no better than we did in *Finsel* and still remain faithful to the definition of obstruction in our jurisprudence: If an accused acted to destroy evidence in a case of a certain person against whom he had reason to believe that there was or would be criminal proceedings and with the intent to impede those proceedings, he has obstructed justice within the meaning of Article 134 and paragraph 96b of the Manual. *See United States v. Athey,* 34 MJ 44, 49 (CMA 1992).

11. All cases may not be clear, but the case at bar is. Appellant knew that his cohort in crime had been arrested; he knew that he personally was implicated by his presence at the scene and that he might well be further implicated during the questioning of his coactor; he knew that, in time, his duties in the personnel shop of his regiment (and, thus, access to blank cards) would become known to investigating agents; and he knew that his possession of the two blank ID cards would be damning evidence against him. Under these circumstances, there can be no serious claim that appellant merely was trying to avoid detection or implication; rather, as his guilty pleas and providence inquiry demonstrate, his conduct fell square-

ing." Para. 96b(2), Part IV, Manual for Courts–Martial, United States, 1984 (emphasis added). This assertion is *not* relevant to the question that was certified to this Court by the Acting Judge Advocate General; indeed, the focus of the certified question and the focus of this argument bear no relationship, one to the other. Consequently, we will not accede to appellant's backdoor effort to seek our review of this issue. Moreover, we do not believe that appellant has correctly construed the complained-of paragraph in the opinion of the court below and, instead, are convinced that appellant's interests have not been short-changed on this point. Accordingly, we decline to consider the matter on our own initiative.

ly within the elements of the military offense of obstructing justice. *See United States v. Jones,* 20 MJ at 40; *accord United States v. Gravely,* 840 F.2d at 1160–61.

### III

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, and GIERKE concur.

SULLIVAN, Chief Judge (concurring in part and in the result):

12. Appellant pleaded guilty to the following offense under Article 134, Uniform Code of Military Justice, 10 USC § 934:

Specification 2: In that [appellant] did, at Marine Corps Base, Camp Pendleton, California, or in the surrounding community, on or about 24 May 1991, wrongfully endeavor to impede an investigation in the case of *United States v. Lance Corporal Joseph A. Lennette* by destroying evidence, to wit: 2 Armed Forces Identification Cards.

13. The majority's affirmance today is consistent with my dissent in *United States v. Turner,* 33 MJ 40, 43 (CMA 1991) (Sullivan, C.J., dissenting). Moreover, I conclude that it is consistent with the broad language of this Court in *United States v. Jones,* 20 MJ 38, 40 (CMA 1985), and the facts presented in *United States v. Finsel,* 36 MJ 441, 443 (CMA 1993).

14. Finally, it is my view that any reasonable servicemember would clearly know that such conduct was a service disorder prohibited by Article 134. *See Parker v. Levy,* 417 U.S. 733, 762–63, 94 S.Ct. 2547, 2564–65, 41 L.Ed.2d 439 (1974) (Blackmun, J., concurring); *see also* ¶ 96b, Manual for Courts–Martial, United States, 1984.