UNITED STATES, Appellee

v.

Andrea L. REEVES, Staff Sergeant
U.S. Air Force, Appellant

No. 04-0145

Crim. App. No. 34730

United States Court of Appeals for the Armed Forces

Argued October 20, 2004

Decided May 17, 2005


BAKER, J., delivered the opinion of the Court, in which GIERKE, C.J., and CRAWFORD, EFFRON, and ERDMANN, JJ., joined.  EFFRON, J., filed a separate concurring opinion.

Counsel


For Appellant:  Frank J. Spinner, Esq. (argued); Major Terry L. McElyea, Major Andrew S. Williams, and Captain Antony B. Kolenc (on brief).

For Appellee:  Major Michelle M. Lindo (argued); Colonel LeEllen Coacher, Lieutenant Colonel Robert V. Combs, and Major James K. Floyd (on brief); Lieutenant Colonel Gary F. Spencer.



Military Judge:  Steven. A. Hatfield


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

Judge BAKER delivered the opinion of the Court.

Appellant was tried before a general court-martial composed of officer and enlisted members.  In accordance with her pleas, she was convicted of disobeying a general regulation (three specifications) in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2000).  Appellant contested the remaining allegations but was ultimately convicted of two additional orders violations and obstruction of justice in violation of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934 (2000), respectively.  The adjudged sentence included a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to grade E-1.  The convening authority approved the sentence as adjudged except for the term of confinement, which was reduced to three years.

The specified issue before the Court requires us to resolve whether as a matter of law, and under the circumstances of this case, an accused may be convicted of obstruction of justice by telling another not to speak to investigators and to seek counsel.  The granted issue questions whether, in any event, the evidence is legally sufficient to sustain a conviction for

obstruction of justice.[1]  We answer the specified question in the affirmative and further hold that on this record, the evidence is legally sufficient.

## FACTS

Appellant was a technical school instructor at Lackland Air Force Base (AFB).[2]  In June and July of 2000, she engaged in consensual sexual activity with four trainees in violation of applicable lawful general regulations.  One of these trainees was Airman Basic (AB) F.  AB F completed technical school training in July 2000 and then reported to her first duty station at Minot AFB.  On August 15, 2000, Appellant was notified that the Office of Special Investigations (OSI) had

---

[1] SPECIFIED ISSUE

WHETHER, AS A MATTER OF LAW, APPELLANT MAY BE FOUND GUILTY OF OBSTRUCTION OF JUSTICE WHERE:  (1) APPELLANT HAD BEEN ENGAGED IN AN IMPROPER RELATIONSHIP WITH A JUNIOR ENLISTED MEMBER; (2) APPELLANT ADVISED THE JUNIOR ENLISTED MEMBER NOT TO SPEAK WITH LAW ENFORCEMENT PERSONNEL; (3) ALTHOUGH NOT ALLEGED IN THE SPECIFICATION, APPELLANT ALSO ADVISED THE JUNIOR ENLISTED MEMBER TO CONSULT WITH MILITARY DEFENSE COUNSEL; AND (4) ALTHOUGH NOT ALLEGED IN THE SPECIFICATION, APPELLANT SENT THE JUNIOR ENLISTED MEMBER $200 TO ASSIST HER WITH FINANCIAL DIFFICULTIES?

GRANTED ISSUE

WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT A CONVICTION FOR OBSTRUCTION OF JUSTICE WHERE:  (1) APPELLANT HAD BEEN ENGAGED IN AN IMPROPER RELATIONSHIP WITH A JUNIOR ENLISTED MEMBER; (2) APPELLANT ADVISED THE JUNIOR ENLISTED MEMBER NOT TO SPEAK WITH LAW ENFORCEMENT PERSONNEL; (3) ALTHOUGH NOT ALLEGED IN THE SPECIFICATION, APPELLANT ALSO ADVISED THE JUNIOR ENLISTED MEMBER TO CONSULT WITH MILITARY DEFENSE COUNSEL; AND (4) ALTHOUGH NOT ALLEGED IN THE SPECIFICATION, APPELLANT SENT THE JUNIOR ENLISTED MEMBER $200 TO ASSIST HER WITH FINANCIAL DIFFICULTIES?

[2] Between the time of the offenses and trial, the Appellant changed her last name from Dunn to Reeves.

3

identified her as a target of an investigation into unprofessional relationships at the Lackland technical school. Also on August 15, 2000, OSI investigators conducted their first interview with AB F.  Appellant subsequently contacted AB F by telephone inquiring whether AB F had talked to OSI and telling her "not to talk to OSI, not to tell them anything."  Appellant also told AB F that she needed to contact the area defense counsel.  AB F replied that she had spoken with OSI, but that she "hadn't told them anything."  Thereafter, AB F testified that Appellant called her "[p]retty frequently" at home and "a few times at work."  According to AB F, the substance of these phone calls was similar to the first August call, again advising AB F not to talk to OSI and inquiring whether she had gone to see the area defense counsel.

During one of these conversations, AB F mentioned that she was experiencing financial difficulty.  Shortly thereafter, the Appellant deposited $200 in AB F's bank account.  Although AB F considered this deposit a gift, a few weeks later Appellant asked that AB F return the money.  After initially saying that she would do so, AB F finally informed Appellant that she would not make repayment and directed Appellant not to contact her further.

OBSTRUCTION AS A MATTER OF LAW

We begin with consideration of the specified question, whether as a matter of law, Appellant may be convicted of obstruction of justice under the circumstances of this case. The elements of obstruction of justice are:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Manual for Courts-Martial, United States (2002 ed.), pt. IV, para. 96.b.

The crux of Appellant's argument is that an accused who advises a witness to invoke her constitutional privilege against self-incrimination or to exercise her right to seek counsel by definition is not engaged in a wrongful act, therefore failing to satisfy the first element of the offense, and thus cannot be convicted of obstruction.

The constitutional privilege against self-incrimination and the right to counsel are rights bestowed every witness. United States v. Cole, 329 F.2d 437, 439-40 (9th Cir.), cert. denied,

5

377 U.S. 954 (1964).  Thus, we generally agree with Appellant's assertion that the administration of justice is not criminally obstructed by a witness exercising these rights.  It is Appellant's conduct as an advisor and not that of a putative witness that is at issue in this case, however.  Without more, a person's advice to another to invoke certain rights, where the advice given is honest and uncorrupt, should not as a matter of law sustain a conviction.  However, that does not mean, as a matter of law, that reference to advice as "constitutional," precludes consideration as to whether that advice was indeed constitutional in nature, uncorrupt, and thus protected conduct for the purposes of obstruction under Article 134.

Whether an accused's conduct was wrongful will turn on contextual factors presenting questions of fact for the members, including, among other things, the actor's tone and manner of delivery.  As the court in Cole stated, "[i]t is the witness' privilege which our inspired Constitution protects and which any person in our courts may invoke . . . not someone else's privilege to capture by force or threat or bribe."  Id. at 440.  In those instances where the advice given is honest, uncorrupt, and disinterested, we agree that giving such advice is not wrongful.  Id.  But one who advises, with a corrupt motive, that a witness exercise a constitutional right or privilege may obstruct the administration of justice.  Id. at 443.  "The

6

lawful behavior of the person invoking the [right] cannot be used to protect the criminal behavior of the inducer." United States v. Cioffi, 493 F.2d 1111, 1119 (2d Cir. 1974). This is the analytic approach taken by a majority of the federal circuits. See, e.g., United States v. Peterson, 385 F.3d 127, 142 (2d Cir. 2004); United States v. Cintolo, 818 F.2d 980, 992-93 (1st Cir. 1987); United States v. McComb, 744 F.2d 555, 563 (7th Cir. 1984); United States v. Baker, 611 F.2d 964, 967-68 (4th Cir. 1979). But see United States v. Farrell, 126 F.3d 484, 487-89 (3d Cir. 1997) (reversing obstruction conviction where appellant had, without coercion, attempted to persuade coconspirator to refrain from volunteering information to investigators). We agree with the reasoning of the majority of the federal circuits and adopt it for the purposes of reviewing the application of Article 134 to the facts of Appellant's case. Therefore, we answer the specified question in the affirmative.

In doing so, however, we need not define the limits of this constitutional framework, nor do we need to consider the relationship between this Court's decisions and that of the service court in United States v. Asfeld, 30 M.J. 917 (A. Ct. Crim. App. 1990) (finding that accused's request that the victim of his indecent language offense not report him was not wrongful because victim has no duty to report such an offense). The facts of this case indicate that Appellant was not, among other

things, a disinterested party.  She was aware of the investigation into her conduct and that AB F was a potential witness in that investigation.  Moreover, for the reasons stated below, the nature and manner of her "advice" takes Appellant's statements to AB F outside the zone of constitutional protection.

## LEGAL SUFFICIENCY

Appellant contends that the evidence is legally insufficient to sustain her conviction for obstruction under Article 134.  This claim requires us to determine "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements [of the crime] beyond a reasonable doubt." United States v. Turner, 25 M.J. 324, 324 (C.M.A. 1987).  We are bound to draw every reasonable inference from the evidence of record in favor of the prosecution in resolving questions of legal sufficiency.  United States v. Rogers, 54 M.J. 244, 246 (C.A.A.F. 2000); United States v. Blocker, 32 M.J. 281, 284 (C.M.A. 1991).

Appellant challenges the sufficiency of the evidence as it pertains to the wrongfulness of her acts and her intent. Specifically, she maintains that "[i]t should not be 'wrongful,' as a matter of law, for an accused to ask a witness to do what the witness can lawfully do anyway."  And, according to

8

Appellant, "[t]he evidence was legally insufficient to infer that [Appellant] had a 'sinister purpose' or subjective intent to impede the due administration of justice."

We have addressed Appellant's first contention in our discussion above. A wrongful act is one done without legal justification or with some sinister purpose. United States v. Barner, 56 M.J. 131, 136 (C.A.A.F. 2001). Advising a witness to exercise certain constitutional rights and privileges may be wrongful if accompanied by a corrupt motive to influence, impede, or otherwise obstruct the due administration of justice.

With respect to Appellant's second contention, the record indicates that shortly after being apprised that she was under investigation for her conduct with AB F, Appellant began calling AB F at her workplace and at her home. According to AB F, Appellant's statements during these calls were to the effect that, "[AB F] needed to go see the area defense [counsel], and not to talk to OSI, not to tell them anything." Furthermore, AB F characterized these calls as frequent.

Appellant argues that her conduct in this respect "was no different than the advice a first sergeant, supervisor or friend would give to a military member under investigation." The court-martial members could rationally have concluded otherwise, however. Even if one accepts for the sake of argument that telling a witness not to speak to investigators is tantamount to

9

advising a witness of his or her right to silence, the tone, frequency, and background of Appellant's calls raised legitimate questions of fact for the members regarding the wrongfulness and intent of the calls. In contrast to Appellant's hypothetical first sergeant, who provides advice to a servicemember under investigation, Appellant was not a disinterested party. Appellant was free to argue to the members that she was advancing the welfare of a subordinate. We conclude, however, that a rational trier of fact might also have found beyond a reasonable doubt that Appellant's statements under the circumstances of this case were wrongful and indicative of an intent to dissuade AB F from cooperating with the recently initiated investigation.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

EFFRON, Judge (concurring):

I write separately to address several matters implicit in the majority opinion.

A conviction for obstruction of justice under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2000), requires a showing that an accused wrongfully did a certain act. Whether or not an act was wrongful is not dependent solely on the accused's interest in the pending investigation or criminal proceeding. Article 134 does not permit the conviction of an interested party who has given honest and uncorrupt advice; likewise, Article 134 does not require proof that a person who gave dishonest and corrupt advice also was an interested party with respect to an investigation or litigation. Whether a person's advice was wrongful is dependent on contextual factors, including, but not limited to, the nature of the person's interest in the subject of the inquiry or proceeding, the circumstances of the conversation, and the person's tone and manner of delivery, which are all questions of fact for the members to decide.

Appellant, who claims that the evidence was insufficient as a matter of law, likens her admonitions to the advice a "first sergeant, supervisor, or friend would give to a military member under investigation." This comparison is unpersuasive. In

contrast to the hypothetical circumstances suggested by Appellant, a rational trier of fact could find that the circumstances of the present case demonstrate that the advice provided by Appellant was dishonest and corrupt. Appellant was an accomplice who was aware of the progress of the investigation into her own conduct. She had no personal relationship with Airman Basic (AB) F beyond a one-time sexual encounter, and did not contact AB F from the time of the sexual encounter until after the investigation commenced. At that point, she began calling frequently to give unsolicited advice. She knew that AB F was a potential witness to the investigation, and she deposited $200 into AB F's bank account. In light of these combined circumstances, a rational trier of fact could find beyond a reasonable doubt that Appellant's statements were wrongful.