**UNITED STATES, Appellee,**

v.

**Specialist Donyale R. DAVIS, United States Army, Appellant.**

**ARMY 20010891.**

U.S. Army Court of Criminal Appeals.

15 March 2006.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Allyson G. Lambert, JA; Captain Gregory T. Rinckey, JA (on brief); Major Billy B. Ruhling II, JA; Captain Doug J. Choi, JA (brief on specified issue).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Theresa A. Gallagher, JA; Captain Michael D. Wallace, JA; Captain Trevor B.A. Nelson, JA (on brief); Colonel Steven T. Salata, JA; Lieutenant Colonel Theresa A. Gallagher, JA; Major William J. Nelson, JA; Captain Trevor B.A. Nelson, JA (brief on specified issue).

Before MERCK, Senior Judge, JOHNSON, and KIRBY, Appellate Military Judges.

## OPINION OF THE COURT

KIRBY, Judge:

Appellant was convicted by a general court-martial composed of officer and enlisted members of assault with a dangerous weapon (two specifications), assault in which grievous bodily harm was intentionally inflicted, obstructing justice, and false swearing, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934.[1] The panel sentenced appellant to a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private E1. The

---

1. Appellant did not formally enter pleas at trial, but the court proceeded as though he had pleaded not guilty. *Cf.* Uniform Code of Military Justice [hereinafter UCMJ] art. 45(a), 10 U.S.C. § 845 (stating "[i]f an accused after arraignment ... fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty").

convening authority approved the sentence as adjudged and credited appellant with thirteen days of confinement credit against his approved sentence to confinement.

The case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866. We have considered the record of trial, appellant's assignments of error, the matters personally raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and the government's response thereto. We find those issues raised by appellant to be without merit. However, on 13 October 2005, this court specified the following issue:

WHETHER THE EVIDENCE SUPPORTING THE CONVICTION FOR OBSTRUCTION OF JUSTICE [2] WAS LEGALLY AND FACTUALLY SUFFICIENT TO FIND THAT APPELLANT COMMITTED A WRONGFUL ACT WHERE APPELLANT DISPOSED OF A WEAPON THAT HE APPARENTLY OWNED AND LAWFULLY POSSESSED. [citations omitted].

Appellate defense counsel filed a brief in response to the specified issue arguing that, the term "wrongful" essentially means "unlawful." Thus, because appellant lawfully owned the weapon, he could dispose of it as he chose, regardless of whether it was evidence of a crime. The government, on the other hand, argues that, because appellant threw the weapon away to conceal evidence in a foreseeable criminal investigation, the disposal was wrongful, whether or not he owned the weapon. We agree with the government for the reasons discussed below.

## FACTS

On or about 29 April 2001, appellant visited a friend's apartment where he got into a verbal dispute with three women. The women testified that, as the argument continued, appellant took out a gun and set it on the counter. The altercation eventually turned physical and the women left the apartment. However, they could not leave the area due to problems with their vehicle.

One of the women used her cellular phone to call KT, a soldier she was dating, for assistance. In response, KT and two other male soldiers, KW and SE, drove to the apartment. When they got out of their car, they saw approximately ten people gathered outside. They returned to the car and attempted to leave when someone started shooting at them. They got out of the car and ran away on foot in an attempt to escape. KW testified that he ran in a different direction than his two friends. He went around a building and came across a man who shot him multiple times, seriously wounding him.

In a written statement to police on 30 April 2001, appellant initially denied involvement in the shootings. In a subsequent written statement,[3] appellant claimed that he heard a shot and then "started shooting" with a "Nine"[4] that he had brought to the scene. He said that he thought he shot five or six times, but could not hear if he hit anything. He also admitted that he shot two or three times at a man he encountered as he ran away from the apartment.

Appellant said that, after the shootings, he got in his vehicle and drove to a park where he put his gun and ammunition magazine in a park trash can. Then, he got back in his car and drove to his barracks where he turned off his phone and laid down. He did not elaborate on his reasons for placing the gun in the trash can.[5]

Appellant stated that he bought the gun at a pawn shop. The police found a receipt from a local pawn shop, indicating appellant had purchased a Jennings nine millimeter pistol on 4 April 2001. Nothing in the record

---

2. Charge III, Specification 2 alleged, "In that Private First Class Donyale R. Davis, U.S. Army, did, at or near Killeen, Texas, on or about 29 April 2001, wrongfully endeavor to impede an investigation by concealing a firearm."

3. Both of appellant's written statements were sworn and admitted at trial over defense counsel's objection.

4. A criminal investigator testified that five or six nine millimeter pistol shell casings were found at the scene of the shooting.

5. The gun was never recovered.

indicates that appellant did not own the gun or have complete dominion and control over it at the time of the shooting.

## LAW

Article 66(c), UCMJ, imposes on this court the duty to affirm only those findings of guilty that we find correct in law and fact. The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this court is] convinced of [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). The test for legal sufficiency is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pabon*, 42 M.J. 404, 405 (C.A.A.F.1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

The elements of the offense of obstruction of justice, in violation of Article 134, UCMJ, are:

(1) That the accused wrongfully did a certain act;

(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;

(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*Manual for Courts–Martial, United States* (2000 ed.) [hereinafter *MCM*], Part IV, para. 96b.[6]

## DISCUSSION

■ In order to decide whether the evidence supporting appellant's conviction was legally and factually sufficient, we must address two issues. First, the issue we specified is whether appellant's disposal of property he apparently owned and lawfully possessed that later became evidence of a crime was "wrongful" in the context of the offense of obstruction of justice in violation of Article 134, UCMJ. While there are many cases involving the offense of obstruction of justice in the military, this specific issue is one of first impression[7] that

---

6. This provision is unchanged in the 2005 edition of the *MCM*.

7. The majority of obstruction of justice cases analyzed by our superior court involve an accused's attempt to influence witnesses to either lie or otherwise inhibit their testimony. *See, e.g., United States v. Reeves*, 61 M.J. 108 (C.A.A.F. 2005) (suspect advised trainee not to talk to investigators and to contact defense counsel); *United States v. Barner*, 56 M.J. 131 (C.A.A.F. 2001) (accused attempted to get witness to retract allegations and to lie); *United States v. Smith*, 39 M.J. 448 (C.M.A.1994) (accused asked third party to contact daughter/witness, promising him that if he did so, accused would consent to their marriage); *United States v. Athey*, 34 M.J. 44 (C.M.A.1992) (accused asked victim of his sexual advances to lie). Those cases dealing with the destruction of physical evidence relate to items that are contraband in nature rather than items lawfully owned by the accused. *See United States v. Lennette*, 41 M.J. 488 (C.A.A.F.1995) (accused destroyed stolen ID cards); *United States v. Jones*, 20 M.J. 38 (C.M.A.1985) (accused flushed narcotics down the toilet). Similarly, many of the obstruction of justice cases decided by the service courts have dealt with attempts by the accused to lie or influence witness testimony. *See United States v. Jenkins*, 48 M.J. 594 (Army Ct.Crim.App.1998) (accused assaulted and raped wife and then lied to police); *United States v. Kirks*, 34 M.J. 646 (A.C.M.R.1992) (accused begged victim's parents not to press charges); *United States v. Asfeld*, 30 M.J. 917 (A.C.M.R. 1990) (accused asked witness not to report him); *United States v. Gray*, 28 M.J. 858 (A.C.M.R.1989) (accused told two paramours to keep silent or lie about their relationships); *United States v. Chodkowski*, 11 M.J. 605 (A.F.C.M.R.1981) (accused told witness if he knew what was good for him he would not testify); *United States v. Caudill*, 10 M.J. 787 (A.F.C.M.R.1981) (accused threatened witness, "[I]f I go down, there will be some bodies floating in the bayou"); *United States v. Rossi*, 13 C.M.R. 896, 1953 WL 2582 (A.F.B.R. 1953) (accused threatened to "get" the witness if he testified); *United States v. Oatney*, 41 M.J. 619 (N.M.Ct.Crim.App.1994) (accused threatened witness and his wife with injury unless witness provided false information to investigators). Our court has only dealt with the destruction of physical evidence involving contraband rather than lawfully owned property. *See United States v. Ridgeway*, 13 M.J. 742 (A.C.M.R.1982) (accused threw marijuana out the window).

we must now resolve. Additionally, we must address whether appellant acted with the intent to impede the due administration of justice or merely to conceal the existence of a crime.

### The Accused Wrongfully Did a Certain Act

Neither the UCMJ nor the *MCM* defines the term "wrongful" in relation to the offense of obstruction of justice, so we must determine what it means in this context.[8] "[W]hen used in criminal statutes, [the word wrongful] implies a perverted evil mind in the doer of the act. [It] implies the opposite of right...." *United States v. Mance*, 26 M.J. 244, 250 (C.M.A.1988) (internal quotations omitted). In a general sense, the term means "in a wrong manner; unjustly; in a manner contrary to moral lay [sic] or justice." *Id.* (internal quotations omitted). In the more specific context of obstruction of justice, it has been described as "an act done without legal right *or* with some sinister purpose." *United States v. Asfeld*, 30 M.J. 917, 928 (A.C.M.R.1990) (emphasis added); *cf.* Dep't of Army Pam. 27-9, Military Judges' Benchbook, para. 3-96-1d (2002) (defining "wrongful" as "without justification or excuse").

Analyzing the plain language of the elements of obstruction of justice delineated in Part IV of the *MCM*, it is clear that the act itself does not have to be *per se* wrongful or unlawful. The exact language of element one of the offense states that the appellant *"wrongfully did* a certain act." *MCM*, Part IV, para. 96b (emphasis added). Thus, while the act itself may be lawful, *e.g.*, disposing of one's own property, the relevant question is whether the act was committed in a wrongful

manner, *e.g.*, without legal right or with sinister purpose. *See Asfeld*, 30 M.J. at 928.

Clearly, an unlawful act is *wrongfully done* by its very nature. For example, attempts to influence witnesses to provide false statements to investigators will be sufficient to meet this element. *See United States v. Barner*, 56 M.J. 131 (C.A.A.F.2001); *United States v. Gray*, 28 M.J. 858 (A.C.M.R.1989). Likewise, a person who destroys contraband or stolen property, which he has no legal right to possess, also commits a "wrongful" act. *See United States v. Lennette*, 41 M.J. 488 (C.A.A.F.1995); *United States v. Jones*, 20 M.J. 38 (C.M.A.1985). There is nothing in the record to suggest that appellant's act of disposing of his lawfully owned gun was *per se* unlawful.

However, it is also possible for an otherwise lawful act to become wrongful if it is performed for an improper purpose. *See United States v. Reeves*, 61 M.J. 108 (C.A.A.F.2005);[9] *United States v. Cintolo*, 818 F.2d 980, 991–994 (1st Cir.1987). For example, in *Reeves*, our superior court held that "[a]dvising a witness to exercise certain constitutional rights and privileges may be wrongful if accompanied by a corrupt motive to influence, impede, or otherwise obstruct the due administration of justice." *Reeves*, 61 M.J. at 111. The court concluded that "whether an accused's conduct was wrongful will turn on contextual factors." *Id.* at 110. The court reiterated the definition of a "wrongful act" as being "one done without legal justification or with some sinister purpose." *Id.* (citing *United States v. Barner*, 56 M.J. 131, 136 (C.A.A.F.2001)).

Regarding disposition of lawfully owned property, " 'it is elemental that one may treat or dispose of his own property in any manner

---

**8.** As appellant correctly notes, the term is defined in relation to several other offenses in the *MCM. See MCM*, Part IV, para. 37c(5) (defining wrongfulness in relation to offenses relating to controlled substances as "without legal justification or authorization"); para. 46c(1)(d) (stating in the context of larceny and wrongful appropriation that the taking, obtaining, or withholding of property "is not wrongful if it is authorized by law or apparently lawful superior orders, or, generally, if done by a person who has a right to possession of the property either equal to or greater than the right of one from whose possession the property is taken, obtained, or with-

held"); para. 100a.c.(2) (explaining that conduct is wrongful in relation to the offense of reckless endangerment "when it is without legal justification or excuse").

**9.** In *Reeves*, appellant advised a witness to invoke her constitutional privilege against self-incrimination and to exercise her right to seek counsel after learning that she (appellant) was being investigated for having a consensual sexual relationship with four trainees, to include the witness whom she was attempting to influence. *Id.*

he may deem fit, even to its utter destruction, so long as he does not infringe upon the rights of others thereby.'" *United States v. Deloso,* 55 M.J. 712, 713 (A.F.Ct.Crim.App. 2001) (quoting *United States v. Rand,* 17 C.M.R. 893, 894, 1954 WL 2721 (A.F.B.R. 1954)). However, a person's right to control his property is not absolute and must be weighed against the community's interests. *See generally* U.S. CONST. amend. IV (prohibiting only unreasonable searches and seizures). We believe that society's interest in preserving evidence of a crime outweighs a person's right to dispose of property, even if he lawfully owns that property. When the otherwise lawful disposal of property is accomplished primarily because it is evidence of a crime, the act negatively affects society and crosses the line from legal to wrongful activity. *See generally United States v. Reeves,* 61 M.J. 108 (C.A.A.F.2005). Thus, even the lawful ownership of property does not provide a legal justification for disposing of evidence of a crime. To hold otherwise would subvert the due administration of justice.[10]

In the present case, we conclude that appellant placed his weapon and ammunition magazine in a park trash can because he knew it was evidence that would link him to the shootings. Given that he had shot and seriously injured another individual, appellant must have known that an investigation would be forthcoming and that he would be a suspect. Furthermore, appellant went to the park and disposed of the weapon and ammunition magazine immediately following the crime and before returning to his barracks. There is no credible explanation for his disposal of these items in the park trash can

other than an attempt to dispose of evidence linking him to the crimes. Because this constitutes a "sinister purpose," we hold that appellant's act was done "wrongfully."[11]

*The Act Was Done With The Intent to Influence, Impede, or Otherwise Obstruct The Due Administration of Justice*

We also must address whether appellant was merely attempting to avoid detection for his crimes, rather than attempting to impede the administration of justice. *See United States v. Asfeld,* 30 M.J. 917, 926 (A.C.M.R.1990).[12] In *Asfeld,* the accused attempted to conceal his crime of communicating indecent language by telling the victim not to report him. *Id.* at 925. This court found that appellant's comment to the victim did not amount to obstruction of justice as it "was at most a mere attempt to conceal an offense which did not establish a specific intent to subvert or corrupt the administration of justice." *Id.* at 926–28.

However, in appellant's case, with a victim bleeding from multiple gunshot wounds, it is obvious that the crime would come to light. Furthermore, appellant knew he had been observed at the scene of the crime and he had been seen earlier that evening with a gun. He knew that, in time, his presence at the scene would be reported to the authorities. He also knew that his possession of the weapon with which the victim was shot would be damning evidence against him. Under these facts, it is clear that appellant was not merely trying to conceal the crime itself, but was instead seeking to destroy evidence and thus weaken the case against him.

On this point, we find appellant's case to be more akin to that of *United States v.*

---

10. This holding does not establish a duty to preserve inculpatory evidence in all circumstances, but instead recognizes a prohibition against the disposal of property for the *primary purpose* of destroying or concealing evidence. We note that if the property would be disposed of for a separate, innocent purpose, unrelated to destroying or concealing evidence, the disposition may not be wrongful.

11. However, we emphasize that no bright line rule exists as to what specific acts constitute obstruction of justice. On the issue of whether an act is wrongfully done, it is important to examine an accused's purpose for disposing of

evidence by examining the totality of the circumstances in each case.

12. In *Asfeld,* we compared the facts of *United States v. Guerrero,* 28 M.J. 223 (C.M.A.1989) (discussing an act which goes beyond a mere attempt to conceal an offense, i.e., appellant told witnesses to lie to criminal investigators) with those of *United States v. Gray,* 28 M.J. 858 (A.C.M.R.1989) (finding that the mere attempt to conceal a crime without more does not amount to an obstruction) to illustrate the legal difference between an act to conceal an offense and one that constitutes obstruction of justice.

*Finsel,* 36 M.J. 441 (C.M.A.1993) [13] and *United States v. Lennette,* 41 M.J. 488 (C.A.A.F. 1995).[14] As in *Lennette,* we find that appellant threw the pistol and ammunition magazine into a trash can with the intent to influence, impede, or otherwise obstruct the due administration of justice. This conduct clearly falls within the elements of the offense of obstruction of justice as described in Part IV of the *MCM.*

We thus hold that the evidence was legally and factually sufficient to support appellant's conviction for obstruction of justice.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge MERCK * and Judge JOHNSON concur.

**13.** In *Finsel,* the accused staged a firefight in order to conceal the fact that a weapon was missing. He thus went beyond merely trying to conceal an offense. Our superior court found that appellant "had reason to believe there were or would be criminal proceedings pending" at some time as a result of his loss of the weapon and that his actions subsequent to the loss were done with the intent to influence, impede, or otherwise obstruct the due administration of justice. *Finsel,* 36 M.J. at 445 (internal quotations omitted). The court emphasized that each offense of obstruction of justice must be resolved on a case-by-case basis. *Id.* at 443.

**14.** In *Lennette,* the court recognized the difficulty in distinguishing whether an accused acted merely to avoid detection of his crime or to corrupt the due administration of justice and again emphasized the importance of deciding obstruction of justice on a case-by-case basis. *Lennette,* 41 M.J. at 490. The court stated:

Without yielding to the temptation to joust in the abstract, we suggest that appellant's hypo-

thetical situations are, themselves, solid evidence of the merits of *Finsel.* With some minimal creativity, one can easily conjure up factual circumstances in which, in particular contexts, the culprit's actions might be simply covering his tracks or, instead, might fall within the scope of obstruction of justice. We can do no better than we did in *Finsel* and still remain faithful to the definition of obstruction in our jurisprudence: If an accused acted to destroy evidence in a case of a certain person against whom he had reason to believe that there was or would be criminal proceedings and with the intent to impede those proceedings, he has obstructed justice within the meaning of Article 134 and paragraph 96b of the Manual.

*Lennette,* 41 M.J. at 490.

* Senior Judge Merck took final action in this case prior to his retirement.