# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant MARK M. EVANS
## United States Air Force

## ACM 38651

## 22 October 2015

Sentence adjudged 25 April 2014 by GCM convened at Ramstein Air Base, Germany. Military Judge: Ira Perkins.

Approved Sentence: Dishonorable discharge, confinement for 20 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis and Daniel Conway (civilian counsel).

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

HECKER, DUBRISKE, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

BROWN, Judge:

At a general court-martial composed of officer members, Appellant was convicted, contrary to his pleas, of rape, assault consummated by a battery, and obstruction of justice, in violation of Articles 120, 128, and 134, UCMJ, 10 U.S.C. §§ 920, 928, 934.[1]

---

[1] Appellant was found not guilty of attempted sexual assault and abusive sexual contact of a male co-worker at a previous duty station. He was instead convicted of assault consummated by a battery for this incident. Appellant was also acquitted of separately assaulting the victim of the rape charge.

The court sentenced Appellant to a dishonorable discharge, confinement for 20 years, and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal, Appellant contends the evidence is legally and factually insufficient to sustain his rape and obstruction of justice convictions. He also argues his sentence is inappropriately severe.[2] We disagree and affirm the findings and sentence.

*Background*

Appellant was a 27-year-old Security Forces member stationed in Thule, Greenland. The primary charges in this case arose while Appellant was on leave in Germany in early October 2013. He went to visit a friend, a female Security Forces member, who lived in a small German village near Spangdahlem Air Base, Germany. While there, Appellant went to a local Oktoberfest festival in the village. During the festival, Appellant met a 16-year-old local girl, YB, and, toward the end of the evening, had sex with her on the side of the driveway leading away from the festival. He was alleged to have forcibly dragged YB away from the festival and sexually assaulted her. Based on this incident, Appellant was convicted of raping YB.

Afterward, Appellant returned to his friend's house where he was staying. He threw his clothes in the washer and turned the washer on high heat. As Appellant later described it to investigators, all he was thinking while he was walking home was how he had just "raped this girl" and he needed to wash his clothes to make sure that any evidence, such as blood or semen, were cleaned out of his clothes. This was the basis for the obstruction of justice charge.

*Factual and Legal Sufficiency*

Appellant asserts that both his rape and obstruction of justice convictions are factually and legally insufficient.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as

---

[2] Sentence severity was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *Turner*, 25 M.J. at 324) (internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

*Rape*

Appellant contends the evidence is factually and legally insufficient to sustain the rape conviction because the element of unlawful force was not proven beyond a reasonable doubt. Specifically, Appellant argues that the evidence as to the element of unlawful force is insufficient because (1) Appellant denied the sex was nonconsensual, (2) YB did not have any injuries consistent with being grabbed by the neck, (3) there was no record Appellant had any injuries consistent with her biting his fingers or fighting him, and (4) it was unlikely that such an attack occurred near such a public gathering. We find the evidence legally and factually sufficient to support Appellant's conviction for rape.

To convict Appellant of rape by force, the Government had to prove Appellant committed a sexual act upon another person by using unlawful force against that other person. *Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 45.a.(a)(1) (2012 ed.). The unlawful force alleged in this specification was that Appellant, "pull[ed] YB to the ground and penetrat[ed] YB's vulva with [Appellant's] penis."

At trial, it was uncontested that Appellant engaged in sexual intercourse with YB in bushes located near the Oktoberfest tent. Instead, the primary dispute was over the amount of force used by Appellant immediately before and during the sexual act, whether YB consented to the sexual activity, and whether Appellant was reasonably mistaken as to whether she consented.

After walking to the Oktoberfest festival in the village, Appellant noticed Ms. YB and approached her. During their introductory conversation, YB told Appellant that she was 16 years old, and Appellant told her he was stationed in Greenland and visiting a friend who lived nearby. Appellant spent the rest of the evening with YB and her friends. Appellant and YB danced with each other several times and, on at least one occasion, kissed each other on the lips. Toward the end of the evening, YB and Appellant went outside alone, to an area lit only by light coming from an opening in the nearby tent.

YB testified that Appellant then kissed her and placed his hand underneath her shirt. She refused his advances by knocking Appellant's hand away and telling him to stop. When she tried to walk away, he grabbed her by the arm and then put his hands around her neck and pulled her back. YB described the hold on her neck as being tight enough for her to feel breathless. Thinking her life was over, she attempted an unsuccessful self-defense maneuver, which caused her to fall.[3] Appellant dragged her towards some nearby bushes. YB testified that she was crying out for help. Appellant initially put his fingers in her mouth to quiet her, which caused her to choke and cough. When she bit down on his fingers, he removed them from her mouth and held her mouth closed. YB continued to struggle and resist by kicking and trying to hit Appellant, while he physically held her down. She eventually stopped fighting because she did not have any physical strength left. Appellant pulled her pants and underwear down to her knees so forcefully that he broke the zipper on her pants, and engaged in sexual intercourse with her. While this was occurring, and with YB fearing for her life, she asked Appellant not to kill her and pleaded with him not to become a murderer. After Appellant ejaculated, he got up without saying anything and walked away. YB ran back to the tent crying and her friends called the police.

When interviewed by German authorities, Appellant claimed the sexual intercourse was consensual. He later retreated from this position when talking to military investigators. His statement was recorded and entered into evidence at trial. During the interview, Appellant's version of events morphed from his initial claims of consent to a version of events much closer to that described by YB. He admitted to investigators that his "animalistic" urges took over during the encounter, that he pulled YB down, that he was a "little bit too aggressive," and that YB "wasn't really into it." He also admitted YB "kind of screamed out" and that he probably put his hand over her mouth to keep her quiet. He also recalled YB telling him something to the effect of "don't hurt me" while he was penetrating her. Appellant conceded to investigators that he believed YB did not want to have sexual intercourse with him, based on YB's verbal and non-verbal responses, but said he decided to continue anyway. He also confided to investigators that his first thought after the incident was that he had just raped her. Nevertheless, Appellant continued to maintain during the interview that YB did not fight back and that she took off her own pants prior to the sexual intercourse.

The members heard the testimony and personally observed the witnesses, including YB. They also heard about Appellant's statements to German and military investigators. We have considered the evidence in the light most favorable to the prosecution and find the evidence legally sufficient to support the conviction. Moreover,

---

[3] Although Appellant was acquitted of assaulting YB by grabbing YB and pulling her to the ground with his arms and body, the military judge concluded that this was a lesser included offense to the rape charge and instructed the members that they must only consider that offense if they found Appellant not guilty to both the rape and sexual assault allegations.

having made allowances for not having personally observed the witnesses, we are ourselves convinced of his guilt beyond a reasonable doubt.

*Obstruction of Justice*

After raping YB, and immediately upon arriving at his friend's house, Appellant removed his clothes and put them in the washer. Appellant explained to investigators that he put the washer on high heat to "wash off anything off of my clothes. Like any evidence whatsoever." Appellant later clarified that the evidence he hoped to remove was any semen or blood that might be on his clothes.

For this, he was charged with obstructing justice. Within the context of this case, the elements of this offense are: (1) Appellant wrongfully washed his clothes to remove evidence; (2) Appellant had reason to believe there were or would be criminal proceedings pending; (3) his washing of the clothes was with the intent to impede the investigation; and (4) this conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 96.b. (2012 ed.). Appellant argues the evidence is insufficient to sustain his conviction because his actions here constituted mere concealment of his own misconduct, not an obstruction of justice.

An accused can obstruct justice even if an investigation is not already underway. *United States v. Finsel*, 36 M.J. 441, 443 (C.M.A. 1993). Instead, the law simply requires that, at the time of the accused's act, he had reason to believe there were or would be criminal proceedings pending against him. *United States v. Athey*, 34 M.J. 44, 48 (C.M.A. 1992). In contrast, merely concealing one's own misconduct is not an obstruction of justice. *United States v. Lennette*, 41 M.J. 488, 490 (C.A.A.F. 1995). Determining whether an act is undertaken to avoid detection or whether it was taken in an effort to corrupt the processes of justice is determined "on a case-by-case basis, considering the facts and circumstances surrounding the alleged obstruction and the time of its occurrence with respect to the administration of justice." *Id.* at 490 (quoting *Finsel*, 36 M.J. at 443) (internal quotation marks omitted).

Here, when he washed his clothes, Appellant had reason to believe there was or soon would be criminal proceedings initiated against him. His fear about a potential investigation and his desire to destroy evidence that would link him to the crime were his primary motivation in washing his clothes. He told investigators that, after he had sex with YB, the first thing that went through his mind was that he thought he raped her. He thought he would be in trouble if she said anything but hoped she would stay quiet. Despite his hopes, however, the German police were already responding to the scene of the assault. Recognizing his predicament, Appellant told investigators he planned to "lay low" and remain inside his friend's house so he would not be seen in the village. He also began making plans to leave the country earlier than he originally planned. All of these

actions demonstrate that Appellant believed that there was, or would be, a criminal investigation into his rape of YB, and, as it turned out, he was correct in his belief.

We find that there is sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that the appellant is guilty of the offense of obstruction of justice and that the evidence is, therefore, legally sufficient. Furthermore, weighing all the evidence admitted at trial and mindful of the fact that we have not heard the witnesses, this court is convinced beyond a reasonable doubt that Appellant is guilty of the offense.

*Sentence Appropriateness*

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant argues that his confinement for 20 years is inappropriately severe when compared to closely related cases. In support of his argument, he cites to seven cases in an effort to illustrate a disparity in severity between his sentence and those imposed in other rape cases. Of those seven cases, he argues five of the seven are more severe than his crimes because of the nature of those cases, the number of victims, or the injuries inflicted on the victims. Appellant also points to two cases that he argues are most similar to his case because they involve a single instance of rape upon a single victim. The sentence to confinement in both of these cases was eight years of confinement. Appellant claims an appropriate remedy in his case would be for this court to only approve a term of confinement between 8 and 12 years.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In exercising sentence appropriateness review, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that any cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Closely related cases include those which pertain to

"coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets his or her burden to demonstrate closely related cases involve highly disparate sentences, the government "must show that there is a rational basis for the disparity." *Id.*

Having reviewed the matters submitted by Appellant and applying the standard set forth in *Lacy*, we find he has failed to meet his burden of demonstrating that the cases he cited are "closely related." These cases do not involve coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers; and there is no direct nexus between Appellant and the accused in the other cases. We therefore decline to engage in a sentence comparison.

Also, we have given individualized consideration to this particular Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial. Appellant was convicted of violently raping a 16-year-old foreign national while she tried in vain to stop him, and then attempting to destroy the evidence surrounding his crime. This crime had a long lasting effect on YB. She testified that this assault caused her to lose her sense of security with her surroundings and to experience panicked feelings when someone brushes against her. She has flashbacks of Appellant's face when she tries to go to sleep and had been in therapy since the incident. We recognize that the sentence to confinement is lengthy, but granting sentence relief in this case would go beyond sentence appropriateness and equate to an inappropriate grant of clemency. We find the approved sentence is legally appropriate based on the facts and circumstances of this particular case and is not inappropriately severe.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38651